[Civ. No. 21929.   First Dist., Div. Two.   Apr. 20, 1965.]

LARRY CLINTON McDONALD, a Minor, etc., et al., Plaintiffs and Appellants, v. CITY OF OAKLAND, Defendant and Respondent.

Robert C. Burnstein, John B. Brethauer, and Sandra J. Shapiro for Plaintiffs and Appellants.

Berry, Davis, Lewis & McInerney, Samuel H. Berry and Richard G. Logan for Defendant and Respondent.

SHOEMAKER, P. J.—This is an appeal by the plaintiffs in a wrongful death action from a judgment entered in favor of defendant City of Oakland, upon the granting of its motion for nonsuit.

The facts are without dispute. Lawrence McDonald, appellants' decedent, while an employee of J. A. Boehner, was killed by an explosion during the painting of a tank located at the Oakland Municipal Auditorium. Boehner, a licensed painting contractor, had entered into a written contract with respondent city, whereby he agreed to reline two sprinkler tanks located at the auditorium. Boehner undertook the job as an independent contractor. He was awarded the contract after submitting a bid which, in compliance with specifications and conditions imposed by respondent city, was accompanied by a brochure describing the material to be used on the job and containing the manufacturer's instructions for application of such material. The brochure submitted by Boehner indicated that he would use ''Amercoat Protective Coating No. 33.'' The manufacturer's instructions contained in said brochure stated that when the product was applied in confined areas, an exhaust fan of sufficient capacity to keep the solvent vapors below 20 per cent of the explosive limit or $\frac{1}{4}$ per cent by volume of solvent vapor in the air was required equipment. The brochure concluded with the following warning: ''Solvents in this product are volatile and flammable. . . . In tanks and other confined areas, any hazard of fire or explosion can be prevented by (1) circulating adequate fresh air continuously during application and drying, (2) using fresh air masks and explosion-proof equipment, (3) prohibiting all flames, sparks, welding and smoking.''

The tank in which the accident occurred was cylindrical in shape, 32 feet long and $6\frac{1}{2}$ feet high. The only entrance to the tank was a manhole approximately 10 inches by 15 inches. Boehner furnished McDonald with an explosion-proof light and a blower to eliminate fumes. Immediately prior to the explosion which resulted in his death, McDonald was alone in the tank and was wearing a mask connected to a compressor. A ventilation pipe 8 inches in diameter had been inserted into the manhole entrance. McDonald had begun spraying at the end of the tank farthest from the manhole. As he moved toward the entrance, he removed sections of the ventilation pipe and handed them up to another of Boehner's employees in order that he could continue spraying.

Appellants' expert testified that the explosion could not have occurred had the solvent vapor in the air been kept below either of the levels specified as safe in the manufacturer's brochure. In his opinion, a hazardous concentration of flammable vapor had resulted from the fact that the ventilation pipe was located near the bottom of the tank, and from the additional fact that McDonald was required to remove sections of the pipe as the work progressed. He stated that it would have been impossible for McDonald, working in the tank with an air hood, to detect any increase in the volume of flammable solvents in the air.

Boehner had never discussed the equipment which he contemplated using on the job with any representative of respondent city. Mr. Campos, a city employee who was responsible for supervising building maintenance and inspecting work done by independent contractors, testified that he was responsible only for the safety of city employees under his supervision and had never undertaken to inquire into the methods or materials which were utilized by independent contractors. He stated that his sole duty in the latter connection was to examine the work executed by an independent contractor and determine whether it complied with the specifications. Although he had familiarized himself with the manufacturer's brochure on "Amercoat 33," he stated that he did not pay much attention to the warning as to its volatility and flammability because it was common practice for paints to bear such a warning. He further stated that he checked the tank relining job two or three times on the day of the accident, but did not inspect the ventilation.

■ "[A] nonsuit may be granted '...'"only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given." ' " (*Meyer* v. *Blackman* (1963) 59 Cal.2d 668, 671 [31 Cal.Rptr. 36, 381 P.2d 916].)

In the instant case, the trial court's decision to grant the motion for nonsuit was based upon its views as to the applicability and authority of two related sections of the Restatement of Torts.

Section 413 of the Restatement of Torts provides that "One who employs an independent contractor to do work which the

employer should recognize as necessarily creating, during its progress, conditions containing an unreasonable risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the absence of such precautions, if the employer (a) fails to provide in the contract that the contractor shall take such precautions (as to which see § 416), or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.''

Section 416 of the Restatement of Torts provides that ''One who employs an independent contractor to do work, which the employer should recognize as necessarily requiring the creation during its progress of a condition involving a peculiar risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions.''

Comment c to section 413 states that ''The fact that the contract under which the work is done provides that the contractor shall take the necessary special precautions does not necessarily relieve the employer from liability, since he may be liable under the rule stated in § 416.''

Comment b to section 416 provides in relevant part that where an employer stipulates in his contract with the independent contractor that the latter shall take the precautions necessary to make the progress of the work safe, the contractor employed to take such precautions is under a duty to indemnify his employer for any liability which the contractor's negligence in failing to take reasonably adequate precautions may bring upon him. ''However, the fact that the contract contains express stipulations for the taking of adequate precautions and that the contractor agrees to assume all liability for harm caused by his failure to do so, does not relieve his employer from the liability stated in this Section.''

A reading of the two sections and their explanatory comments leaves no doubt that they were intended to apply in the alternative and that, pursuant to their terms, one who employs an independent contractor under an agreement requiring the latter to take special precautions to avoid an unreasonable risk of bodily harm to others does not thereby relieve himself of liability in the event the contractor fails to take such precautions. Such was the interpretation applied in *Courtell* v. *McEachen* (1959) 51 Cal.2d 448, 457 [334 P.2d 870], where the court stated that sections 413 and 416 ''impose

liability upon the employer for an injury caused by the absence of such precautions if he has failed to take steps to assure observance of the precautions, either by a provision in the contract or in some other reasonable manner (§ 413), *or* if the independent contractor has not exercised reasonable care to take such precautions (§ 416).'' (Italics added.)

In the instant case, the trial court, in granting the motion for nonsuit, expressed the opinion that the evidence favorable to appellants was sufficient to support a finding that respondent had breached the duty imposed by section 416 of the Restatement of Torts but not the duty imposed by section 413 of the Restatement of Torts. However, the court concluded that since section 413 alone had thus far been adopted as a part of the California law, a judgment in appellants' favor could not be based upon section 416, and that it was therefore required to grant the motion for nonsuit.

On this appeal, the parties have similarly confined their arguments to the question whether either of the above-mentioned sections of the Restatement of Torts affords a basis for the imposition of liability upon respondent. Appellants contend that the contract between respondent and Boehner did not require the latter to take the precautions contemplated by section 413, and that, in any event, the evidence was sufficient to support a finding that Boehner failed to take such precautions and that respondent was accordingly liable for McDonald's death under section 416. Respondent, on the other hand, asserts that its contract with Boehner did comply with the requirements of section 413, and that section 416 is not the law of this state. Respondent tacitly concedes that the evidence favorable to appellants was sufficient to support findings that it did violate section 416, that said violation was the proximate cause of McDonald's death, and that appellants' right to recover was not barred by either contributory negligence or assumption of the risk on the part of McDonald.

It is apparent that if section 416 does afford a basis for liability under California law, the judgment of nonsuit must be reversed and it therefore becomes unnecessary to determine whether respondent did or did not comply with section 413. The arguments pertaining to section 416 will accordingly be discussed first.

Respondent, in contending that section 416 is not the law of this state, relies upon a number of California cases in which the courts have refused to hold the employer of an independent contractor liable for the negligence of the latter. However, all of these authorities are easily distinguished. *McDonald* v.

*Shell Oil Co.* (1955) 44 Cal.2d 785 [285 P.2d 902]; *Abrons* v. *Richfield Oil Corp.* (1961) 190 Cal.App.2d 640 [12 Cal.Rptr. 271]; *Gonzales* v. *Robert Hiller Constr. Co.* (1960) 179 Cal. App.2d 522 [3 Cal.Rptr. 832]; *Deorosan* v. *Haslett Warehouse Co.* (1958) 165 Cal.App.2d 599 [332 P.2d 422]; and *Williams* v. *Fairhaven Cemetery Assn.* (1959) 52 Cal.2d 135 [338 P.2d 392], are authority only for the rule that one who hires an independent contractor and reserves only a general supervisory right to control the work so as to insure its completion in accordance with the contract does not thereby render himself liable for the contractor's negligence in performing the details of the work. In none of those cases was there any evidence that the independent contractor was hired to perform work which the employer should have recognized as necessarily creating, during its progress, conditions containing an unreasonable risk of bodily harm to others unless special precautions were taken. In *Decker* v. *S. H. Kress Co.* (1959) 168 Cal. App.2d 365 [335 P.2d 952], upon which respondent also relies, the court merely held that a property owner was not liable to an invitee who sustained injuries as the result of a condition which was as obvious and well known to him as it was to the property owner.

Section 416 has been cited with approval in *Courtell* v. *McEachen, supra,* at pages 456-457; *Snyder* v. *Southern Cal. Edison Co.* (1955) 44 Cal.2d 793, 797 [285 P.2d 912]; *Knell* v. *Morris* (1952) 39 Cal.2d 450, 456 [247 P.2d 352]; and *Potter* v. *Empress Theatre Co.* (1949) 91 Cal.App.2d 4, 10-11 [204 P.2d 120]. Although respondent asserts that section 416 did not provide the actual basis for decision in any of these cases, they are nevertheless a persuasive indication of the present state of California law. ▮▮▮ Even assuming these authorities to be thus distinguishable, we are satisfied that section 416 is now a part of the California law. In the recent case of *Conner* v. *Utah Constr. & Mining Co.* (1964) 231 Cal.App.2d 263, 273 [41 Cal.Rptr. 728] (petition for hearing by Supreme Court denied), we held that the jury had properly been instructed on both sections 413 and 416 of the Restatement of Torts.

▮▮▮ Respondent, as above noted, does not contend that there was no evidence in support of a finding that it violated the duty imposed by section 416. Any such contention would be futile in view of the testimony by appellants' expert witness and the uncontradicted evidence that respondent had actual knowledge, through its employee, that volatile and flammable

paint was to be applied in a confined area where the taking of special precautions was essential to the safety of the worker.

Judgment reversed.

Agee, J., and Taylor, J., concurred.

A petition for a rehearing was denied May 20, 1965, and respondent's petition for a hearing by the Supreme Court was denied June 16, 1965.