MOLINARI, P. J.
 

 In this wrongful death action plaintiffs, as the heirs of decedent, Lawrence 0. McDonald, appeal from the judgment in favor of defendant, the City of Oakland (hereafter referred to as “City”). The judgment was entered upon a jury verdict in the City’s favor. Plaintiffs challenge the propriety of various instructions and the admissibility in evidence of a certain document.
 

 Statement of the Case
 

 The instant ease was tried following the reversal of the judgment of nonsuit in
 
 McDonald
 
 v.
 
 City of Oakland,
 
 233 Cal.App.2d 672 [43 Cal.Rptr. 799],
 
 [1]
 
 where it was held that section 416 of the Restatement of Torts is a part of the California law. That section provides that “One who employs an independent contractor to do work, which the employer should recognize as necessarily requiring the creation during its progress of a condition involving a peculiar risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the failure of the contractor to exercise reasonable care to take such precau
 
 *815
 
 tions. ’ ’
 
 [2]
 
 In reaching its decision
 
 McDonald
 
 noted that section 416 has been cited with approval in
 
 Courtell
 
 v.
 
 McEachen, 51
 
 Cal.2d 448, 456-457 [334 P.2d 870] ;
 
 Snyder
 
 v.
 
 Southern Cal. Edison Co.,
 
 44 Cal.2d 793, 797 [285 P.2d 912]; and
 
 Knell
 
 v.
 
 Morris,
 
 39 Cal.2d 450, 456 [247 P.2d
 
 352];
 
 and that in
 
 Conner
 
 v.
 
 Utah Constr. & Mining Co.,
 
 231 Cal.App.2d 263, 273 [41 Cal.Rptr. 728] (petition for hearing by Supreme Court denied), the giving of an instruction on section 416 was held proper.
 

 The instant ease, therefore, was tried upon the theory that section 416 was the “law of the case” in view of the holding in
 
 McDonald.
 
 With this background in mind we proceed to set out the pertinent facts of the present case. McDonald, an industrial painter, was killed in an explosion which occurred inside the water tank that he was painting at Oakland Auditorium Theater pursuant to a written contract between his employer, J. A. Boehner, and the City, whereby Boehner, a painting contractor, agreed to paint the inside of two water sprinkler tanks. Bach of these tanks was cylindrical, measuring 32 feet long by
 
 6%
 
 feet high, and had as its sole entrance a manhole at one end, which was approximately 11 by 17 inches. In accordance with the bid which Boehner had submitted to the City to obtain the contract for painting these tanks, Boehner was using a product called “Amercoat Protective Coating No. 33.” The instructions of the manufacturer of this paint were contained in a brochure accompanying the paint and stated that when the product is applied in confined areas, an exhaust fan of sufficient capacity to keep the
 
 solvent
 
 vapors below 20 percent of the explosive limit or percent by volume of solvent vapor in the air is required equipment. This same brochure contained the following warning: ‘ ‘ Solvents in this product are volatile and flammable. Keep containers closed and away from heat, open flames or sparks. Avoid prolonged breathing of vapors or prolonged or repeated contact with skin. In tanks and other confined areas, any hazard of fire or explosion can be prevented by (1) circulating adequate fresh air continuously during application and drying, (2) using fresh air masks and explosion-proof equipment, (3) prohibiting all flames, sparks, welding and smoking. ’ ’
 

 Boehner testified that prior to obtaining the contract for
 
 *816
 
 the painting job at the Oakland Auditorium he had used Amercoat 33 on other jobs; that he was familiar with its properties and aware of the safety precautions which had to be taken in order to create adequate ventilation in the area which was being painted and to prevent detonation of any explosive gases which were created during the painting process; and that he discussed all facets of the job, including the hazards of using Amercoat 33 and the safety precautions to be followed, with McDonald prior to commencement of the work.
 

 In connection with the ventilation problem created by using Amercoat 33 for the tank-painting job, Boehner described the exhaust-type ventilation system which was used on the job as consisting of a blower fitted with some 10-ineh steel ducting, which was inserted into the tank through the manhole opening. According to Boehner, the fumes created inside the tank during the painting would be exhausted through the piping and then blown by the blower through other piping and ultimately to the street outside the auditorium. However, although Boehner planned that the piping inside the tank would extend almost to the rear of the tank at the commencement of the job, he recognized that in order for McDonald to continue spraying as he moved towards the entrance of the tank it would be necessary for segments of the piping inside the tank to be removed.
 

 In addition to this ventilation system which Boehner rigged for the painting of the tank, he also equipped McDonald with an aluminum explosion-proof lamp, an air mask which was connected to a compressor outside of the tank, and a spray gun, which was made of brass, but was not equipped with a ground wire.
 

 Shortly before the explosion which resulted in his death, McDonald was alone inside the tank spraying at the end farthest from the manhole. He was wearing his air mask and therefore could not detect any increase in flammable solvents in the air inside the tank. As contemplated, in order to continue spraying as he moved toward the tank entrance, he removed sections of the ventilation pipe and handed them to a co-employee who was standing outside the tank. When the explosion occurred this pipe extended 5 feet into the tank. Also at that time the ground wire attached to the explosion-proof lamp which McDonald was using was not connected. Following the explosion a wrench which McDonald carried upon his clothing was found on the floor of the tank.
 

 
 *817
 
 In a conversation which McDonald had with his co-employee at the hospital following the accident, McDonald stated that immediately prior to the explosion, when he had stepped backwards he felt that he had stepped on something other than the floor of the tank, so that he shifted his weight at this time and thus may have struck the side of the tank with the spray gun he was using.
 

 Dr. Jerome P. Thomas, Professor of Sanitary Chemistry at the University of California, testified that although the basic components of Amereoat 33 are volatile in nature, an explosion, including one caused by a spark or flame, cannot occur if the solvent vapors in the air are kept below either of the levels specified as safe in the manufacturer’s brochure; but that adequate ventilation was essential in order to maintain the proper mixture of solvents in the air; and that in order for an exhaust-type ventilation system to provide adequate circulation of air in a tank the size and shape of that which McDonald was painting, the ventilation pipe would have to extend to within 16 inches of the end of the tank. Thomas further testified that in his opinion the explosion that killed McDonald was caused by the fact that the ventilation pipe inside the tank, which did not extend to the end of the tank initially, was gradually shortened by the removal of sections of the pipe, and that the explosive vapors were thus permitted to accumulate in excess of the levels specified in the Amereoat brochure.
 

 Concerning the City’s involvement in the tank-painting project, the following evidence was adduced: The contract for refining the two tanks at the Oakland Auditorium Theater was awarded to Boehner on the basis of the bid which he submitted to the City. In accordance with the City’s requirements concerning the submittal of bids, Boehner’s bid specified that he would use Amereoat 33 paint on the job. He accompanied the bid with the brochure prepared by the manufacturer of this paint, which brochure, as already indicated, contained a description of the paint and instructions for its application, including warnings for use of this paint in closed areas.
 

 According to Boehner, prior to commencing the job he never had a discussion with any representative of the City concerning safety precautions in the performance of the painting, nor did the City ever make any inquiries of him along these fines. Mr. Placido Campos, a city employee, testified that he was appointed by the City to act as inspector for
 
 *818
 
 the tank-painting job at the municipal auditorium; that in such a capacity his sole responsibility was to examine the work being performed by Boehner to determine whether it complied with the specifications for the job; that although he had read the manufacturer’s brochure on Amereoat 33, including the warnings as to its volatility and flammability, he made no inquiry into the properties of the product, the equipment and method being used by Boehner, or what, if any, safety precautions should be taken in using this product. Finally Campos testified that he was at the Oakland Auditorium Theater approximately twice a day while the painting job was in progress, but that he never checked the painting or the ventilating equipment and never looked in the tank while painting was in progress.
 

 Section 416 of the Restatement of Torts
 

 We are initially presented with the specific question whether, for liability to attach under section 416, the employer not only must recognize that the work being performed by the independent contractor necessarily involves peculiar risks of harm unless special precautions are taken, but must also know, or as a reasonable man should know, that the independent contractor has not taken or planned to take such precautions. In defining defendant’s duty in the instant case the court below took the position that such knowledge was essential, and, accordingly, so instructed the jury and rejected an instruction submitted by plaintiffs which omitted the element of knowledge on the part of defendant.
 
 [3]
 
 We have
 
 *819
 
 concluded that the principle enunciated in section 416 does not require such knowledge and that the trial court erred in giving its instruction.
 

 Under section 416 liability attaches when the employer knows or should know that the risks described in the section are involved in a contemplated project and neither the independent contractor nor the employer exercises reasonable care to see that the requisite precautions are taken. “ [T]he employer remains liable for injuries resulting from dangers which he should contemplate at the time that he enters into the contract, and cannot shift to the contractor the responsibility for such dangers, or for taking precautions against them.” (Rest. 2d Torts, § 416, Comment a, p. 395.) As indicated by various comments and explanatory material in both editions of the Restatement of Torts, such a duty is imposed upon the employer because the nature of the risk makes it imperative that the most responsible party involved in the transaction, that is, the party for whose benefit the work is being undertaken, be charged with the ultimate protection of those who are performing the dangerous work or who are likely to be injured during its progress. A requirement that the employer must know, or as a reasonable man should know, that the contractor is not taking the requisite precautions would contravene this rationale.
 

 We note, moreover, that
 
 McDonald
 
 makes no reference to a requirement that the employer have or should have knowledge that the independent contractor is not taking the requisite safety precautions. Rather the opinion indicates that the sole knowledge which the employer must have in order for him to be subject to liability under section 416 is knowledge of the risks involved in the nature of the work. Specifically, we refer to the following language of the
 
 McDonald
 
 opinion: ‘‘Re
 
 *820
 
 spondent, as above noted, does not contend that there was no evidence in support of a finding that it violated the duty imposed by section 416. Any such contention would be futile in view of the testimony by appellants’ expert witness and the uncontradieted evidence that respondent had actual knowledge, through its employee, that volatile and flammable paint was to be applied in a confined area where the taking of special precautions was essential to the safety of the worker.” (Pp. 677-678.)
 

 Defendant relies upon
 
 Courtell, supra,
 
 and
 
 Ferrel
 
 v.
 
 Safway Steel Scaffolds,
 
 57 Cal.2d 651, 656 [21 Cal.Rptr. 575, 371 P.2d 311], in support of the trial court’s interpretation of section 416. Although
 
 Ferrel
 
 deals specifically with section 413 of the Restatement of Torts, while
 
 Courtell
 
 deals with both sections 413 and 416, each ease, in discussing the knowledge requirement of the respective sections, refers to the fact that the employer must have knowledge that the work being performed by the independent contractor involves risks that require special precautions. Such knowledge, however, is distinct from knowledge that the contractor is not taking the appropriate safety precautions. The former knowledge is clearly a requisite for liability under section
 
 416;
 
 the latter is not.
 

 Section 413 of the Restatement of Torts
 

 Plaintiffs assign as error the giving of the following instruction, essentially a statement of the principles enunciated in section 413 of the Restatement of Torts (now § 413, Rest. 2d Torts): “One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer (a) fails to provide in the contract that the contractor shall take such precautions, or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.”
 

 In the first trial in this case plaintiffs predicated their claim of liability against defendant on the dual basis of defendant’s alleged violations of both sections 413 and 416. Plaintiffs’ contention with regard to the applicability of section 413 was that the contract between Boehner and defendant did not require the former to take the precautions specified in section 413. On the retrial of this case, following the holding in
 
 McDonald,
 
 that section 416 was the applicable
 
 *821
 
 law in California, plaintiffs abandoned their previous position that section 413 applied to the instant case and chose to rely solely on the applicability of section 416. As a result of this change in theory by plaintiffs upon retrial, the subject instruction in terms of section 413 should not have been given.
 

 Admissibility of the Contract
 

 The trial court admitted into evidence over plaintiffs’ objection the contract between the City and Boehner awarding Boehner the job of painting the inside of the two water tanks. The objection was based essentially on the fact that plaintiffs no longer predicated their claim against the City on the latter’s violation of the duty created by section 413 of the Restatement of Torts. The trial court admitted the contract into evidence on the basis that it was relevant to the relationship between the parties and to the issue of Boehner’s negligence, raised by the City’s answer. Boehner’s negligence is relevant under the doctrine of
 
 Witt
 
 v.
 
 Jackson
 
 (57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641]).
 

 Since plaintiffs, at the retrial, abandoned their position that section 413 applied, and since the question of whether the contract between Boehner and the City required the former to take various safety precautions was not relevant to the issues raised by plaintiffs’ reliance on section 416, the subject contract was not admissible for the purpose of proving the circumstances under which McDonald was engaged in painting the water tanks. The contract, however, was admissible on the issue of Boehner’s negligence under the
 
 Witt
 
 doctrine since the relationship between Boehner and the City was relevant to that issue. In any event, since proper instructions in terms of the basis of liability under section 416 would make it clear to the jury that any contract provisions between Boehner and the City requiring the former to take special precautions would not preclude a finding of the City’s liability under that section, we perceive no error in the admission of this contract into evidence.
 

 McDonald’s Duty of Care
 

 In instructing the jury as to the standard of care which McDonald was required to exercise for his own safety, the trial court gave two instructions. The first charged as follows: ‘ ‘ While the deceased was only required to exercise ordinary care for his own safety and protection, nevertheless the amount of that care which he was required to exercise must be measured by the extent of his exposure to danger. A
 
 *822
 
 person wlio is in a position of danger must exercise care proportionate to the danger; he must be as vigilant and watchful as the danger of his position requires. If he is in a position of constant danger, he must be constantly vigilant and watchful. He must exercise such amount of care which an ordinarily prudent person in a like position of danger would exercise for his own safety and protection.
 

 11 Therefore, if jmu find that at or immediately prior to the accident the decedent ivas in a position of danger and that he failed to exercise an amount of care commensurate with such danger, then he was negligent; and if you further find that such negligence proximately caused or contributed to the accident and injuries, his heirs cannot recover. ’ ’
 

 The second instruction, which immediately followed the above instruction, charged as follows:
 

 “The amount of care which a workman is bound to exercise for his own safety must be determined by the rule of reasonable necessity. When a person’s lawful employment requires that he work in a dangerous location or a place that involves unusual possibilities of injury and to give his attention to his work, or requires that, in the line of his duty, he takes risks which ordinarily a reasonably prudent person would avoid, the necessities of such a situation, insofar as they limit the caution that he may take for his own safety, lessen the amount of caution required of him by law in the exercise of ordinary care.
 

 ‘1 In other words, where a person must work in a position of possible danger, the amount of care which he is bound to exercise for his own safety may well be less by reason of the necessity of his giving attention to his work than would otherwise be the case, and it is for the jury to determine whether or not the decedent was acting as a person of ordinary prudence under the same or similar circumstances at the time the accident occurred. ’ ’
 

 Plaintiffs contend that the two instructions are conflicting and that as applied to the instant case the latter instruction correctly states the law. We agree with plaintiffs’ contention. The first instruction is taken practically verbatim from
 
 Warnke
 
 v.
 
 Griffith Co.,
 
 133 Cal.App. 481, 494 [24 P.2d 583], Although the giving of this instruction in that form has not, to our knowledge, been specifically approved in any subsequent appellate decision, the substance of the instruction is a combination of the instruction that the 'amount of caution required of a person in the exercise of ordinary care depends upon the danger which is apparent to him or should be appar
 
 *823
 
 ent to a reasonably prudent person in the particular situation and circumstances involved, and the instruction that in a ease involving an especially dangerous activity a person of ordinary prudence will exercise extreme caution when engaged in such activity. (See
 
 Borenkraut
 
 v.
 
 Whitten,
 
 56 Cal.2d 538, 544-546 [15 Cal.Rptr. 635, 364 P.2d 467];
 
 Tucker
 
 v.
 
 Lombardo,
 
 47 Cal.2d 457, 463-464 [303 P.2d 1041]; and see Cal. Jury Instns., Civ. (4th rev.ed. 1956) Nos. 102-A and 102-D.)
 

 In
 
 Borenkraut
 
 it was held to be prejudicial error to refuse to give an instruction that a person of ordinary prudence will exercise extreme caution when engaged in a dangerous activity. That case, however, dealt with a specific factual situation which fell within the ambit of the law usually applicable to the risk incident to dealing with dangerous instrumentalities in general, and explosive or highly inflammable materials in particular. That rule provides that “the care required of a reasonable person in dealing with such instrumentalities, because of the great risks involved, is so great that even a slight deviation from the standards of care will constitute negligence.' ’
 
 (Borenkraut
 
 v.
 
 Whitten, supra,
 
 at p. 545; and see cases there cited.) The rule espoused in
 
 Borenhraut,
 
 however, to the extent that it requires a person of ordinary prudence to exercise extreme caution when engaged in a dangerous activity, is not applicable when a person’s lawful employment
 
 requires
 
 that he must work in a dangerous situation. In such case the applicable rule is that stated by the trial court in the instant case in its second instruction, that is, that when a person must work in a dangerous situation, the necessities of such a situation, insofar as they limit the caution that he can take for his own safety,
 
 lessen
 
 the amount of caution required of him by law in the exercise of ordinary care.
 
 (Austin
 
 v.
 
 Riverside Portland Cement Co.,
 
 44 Cal.2d 225, 239 [282 P.2d 69];
 
 Fry
 
 v.
 
 Sheedy,
 
 143 Cal.App.2d 615, 627 [300 P.2d 242] ;
 
 Ostertag
 
 v.
 
 Bethlehem etc. Corp.,
 
 65 Cal.App.2d 795, 801 [151 P.2d 647], and cases cited therein; see Cal. Jury Instns., Civ. (4th rev. ed. 1956) No. 102-B.)
 

 In view of the foregoing, we conclude that while it -was proper for the trial court to instruct that the amount of caution required of a person in the exercise of ordinary care depends upon the danger which is apparent to him or should be apparent to a reasonably prudent person in the particular situation and circumstances involved, it was error for the trial court to instruct that a person in a position of danger “must be as vigilant and ivatchful as the danger of his position
 
 *824
 
 requires” and that “If he is in a position of constant danger, he must be constantly vigilant and watchful. ’ ’ Such a charge was inconsistent with the later charge defining the lesser amount of caution required when a person must work in a dangerous situation.
 

 Assumption of Bisk
 

 Plaintiffs contend that the trial court erred in instructing the jury on the defense of assumption of risk.
 

 ‘ ‘ Instructions covering the doctrine [of assumption of risk] are properly given only when the evidence shows that the accident arose from a danger of which the victim had actual, as distinguished from constructive, knowledge prior to the happening of the accident, that the victim appreciated the nature and magnitude of the specific danger involved, and that [he] voluntarily chose to enter, or to remain in, the zone of known danger and thus to accept the risk of injury involved.”
 
 (Goodwin
 
 v.
 
 Bryant,
 
 227 Cal.App.2d 785, 791 [39 Cal.Rptr. 132] (disapproved on other grounds,
 
 Prichard
 
 v.
 
 Veterans Cal Co.,
 
 63 Cal.2d 727, 732 [48 Cal.Rptr. 904, 408 P.2d 360]); see
 
 Hook
 
 v.
 
 Point Montara Fire etc. Dist.,
 
 213 Cal.App.2d 96, 99-100 [28 Cal.Rptr. 560].)
 

 Plaintiffs contend that there was no evidence before the trial court showing that McDonald “voluntarily” consented to accept the “particular risk” that resulted in his death or that he appreciated the nature or magnitude of that risk. We cannot agree with this contention. The evidence shows that McDonald was an experienced painter, had used Amereoat 33 on prior occasions (at least in painting the other tank at the Oakland Auditorium Theater) and had discussed with Boehner the hazards of using this paint, including the problems relating to adequate ventilation and the precautions which should be taken. This evidence, we believe, would allow the fact-finder to conclude that McDonald was aware of the particular risk involved in painting the water tanks, appreciated the magnitude of that risk, and voluntarily consented to accept it.
 

 Contributory Negligence
 

 In an attempt to show that any errors committed by the trial court were not prejudicial and therefore would not require a reversal of the judgment, defendant takes the position that McDonald was guilty of contributory negligence as a matter of law so as to preclude plaintiffs’ recovery in any event. We find no merit to this argument. Clearly the question of contributory negligence was a question for the jury, which
 
 *825
 
 was confronted, on the one hand, with the presumption that McDonald exercised due care,
 
 [4]
 
 and, on the other, with the evidence tending to indicate that McDonald’s negligence with regard to the equipment he used in the process of painting the subject tank caused the spark that ignited the explosive vapors that had accumulated in the tank at the time of the explosion.
 

 Conclusion
 

 Although we perceive no prejudice to plaintiffs in the trial court’s erroneously giving the instruction in terms of section 413 of the Restatement of Torts, the erroneous instruction with respect to the principle enunciated in section 416 of that treatise was so fundamental to the issue of defendant’s duty to McDonald that it amounted to prejudicial error. Such error, when coupled with the giving of the conflicting instructions on McDonald’s duty of care, requires a reversal.
 

 The judgment is reversed.
 

 Sims, J., and Blkington, J., concurred.
 

 A petition for a rehearing was denied December 6, 1967, and respondent’s petition for a hearing by the Supreme Court was denied January 11, 1968.
 

 [1]
 

 A petition for a hearing by the Supreme Court was denied.
 

 [2]
 

 Section 416 of the Restatement of Torts appears in substantially the same form as the same numbered section in the Restatement Second of Torts.
 

 [3]
 

 The instruction given by the court on its own motion was as follows:
 
 ‘ ‘
 
 One who employs a competent independent contractor to do work under an agreement requiring the independent contractor to take special precautions to avoid unreasonable risks of bodily harm to others in the doing of such work, which the employer should recognize as necessarily requiring the creation during the progress thereof of a condition involving peculiar risks of bodily harm to others unless such precautions are taken, is negligent and is subject to liability for bodily harm caused to such persons by the failure of the contractor to exercise reasonable care to take such precautions, if the employer of the independent contractor knew or, as a reasonable man should have known, that the independent contractor had not taken or planned to take such precautions, and provided that such person, in the instant case the decedent, was not guilty of negligence which proximately contributed to said accident and that said decedent did not assume the risk of Ms undertaking.
 
 ’ ’
 

 The rejected instruction read as follows: “It is the law of tMs State that when one employs an independent contractor, as the City of Oakland did in the instant ease, to do work which the employer should recognize will, during the course of the work, necessarily create a peculiar risk of bodily harm to others such as employees performing the work, unless special precautions are taken, the employer of the independent contractor,
 
 *819
 
 that is, the City of Oakland in this ease, is liable to one who suffers bodily harm as a result of the failure of the contractor to take such precautions unless the employer itself has taken reasonable precautions against such risks.
 

 ‘ ‘ Therefore, if you find that the City of Oakland employed the Boehner Company to perform work which the City should have known would, during the course of the work, necessarily create a peculiar risk of bodily harm to persons such as the decedent in the instant case, unless such precautions were taken, and you further find that neither the Boehner Company nor the City took such special precautions was the proximate cause of Mr. McDonald’s death, then the City of Oakland is liable to the heirs of Mr. McDonald, that is, the Plaintiffs herein, for their losses resulting from Ms death unless you find that the decedent himself was guilty of contributory negligence which was the proximate cause of his death. (Sic.) ’ ’
 

 [4]
 

 This case was tried prior to January 1, 1967, when the new California Evidence Code became effective. Under section 12 of the new Evidence Code a trial commenced before its effective date is not governed by the Code. Accordingly, under subdivision (b) of section 12, the rules of evidence applicable at the commencement of the trial govern. Under former Code of Civil Procedure section 1963, subdivision 4, a presumption of due care which was evidence to be weighed by the jury against actual evidence of lack of due care was available in a wrongful death action on behalf of’a decedent. (See
 
 Westberg
 
 v. Willde, 14 Cal.2d 360, 367-368 [94 P.2d 590] ;
 
 Scott
 
 v.
 
 Burke,
 
 39 Cal.2d 388, 394-401 [247 P.2d 313].) Therefore,, for purposes of this appeal, the effect of the.' presumption of due care as evidence-is applicable.- However, since, this ease must be retried,- the trial will be governed by the new" Evidence Code and section 521 thereof which; supersedes the presumption in former Code of Civil Procedure section 1963, subdivision 4. (See Evid. Code, §§ 12, subd. (b) (1), and 521.)