[Civ. No. 36640. Second Dist., Div. One. Nov. 9, 1970.]

GEORGE WALKER, Plaintiff and Appellant, v.
CAPISTRANO SADDLE CLUB, Defendant and Respondent.

## COUNSEL

Wilson & Dunn and G. William Dunn for Plaintiff and Appellant.

W. Mike McCray & Associates and W. Mike McCray for Defendant and Respondent.

## OPINION

**GUSTAFSON, J.**—At the conclusion of the opening statement by counsel for plaintiff in a nonjury trial, defendant Capistrano Saddle Club (hereinafter Capistrano) successfully moved for a judgment of nonsuit. (Code Civ. Proc., § 581c; *Gonsalves* v. *City of Dairy Valley* (1968) 265 Cal.App.2d 400 [71 Cal.Rptr. 255].) Plaintiff appeals.

 We recite the evidence which plaintiff intended to present as revealed by the opening statement of counsel.

Capistrano was developing a subdivision tract and desired to provide access to the subdivision by means of a bridge over a public highway. High voltage electric wires owned and maintained by San Diego Gas & Electric Company spanned the eastern end of the bridge site. Apparently the poles carrying the wires were located on Capistrano's land, although what, if any, property interest Capistrano had in the bridge or in the land over which it was being constructed is not revealed.

Capistrano contracted with Griffith Construction Company, an independent contractor, to construct the bridge. The independent contractor engaged another person to furnish a crane and operating personnel to do the crane work which was required in constructing the bridge.

On December 9, 1964, the crane was on the job site. The crane operator was aware of the existence of the electric wires and had mentally noted the area beyond which the crane should not be operated because of the danger of touching the electric wires. The crane operator operated the crane beyond that area as a consequence of which the boom came in contact with the electric wires causing electricity to travel through the crane. Plaintiff, an employee of the general contractor, was a laborer who was pouring cement and had his hands on a bucket hanging from a cable attached to the crane. Plaintiff received severe burns and other serious injuries.

At an earlier stage in the construction of the bridge, it was necessary to use a pile driver to install the piers on which the east end of the bridge would be supported. Capistrano contracted with San Diego Gas & Electric

Company to temporarily reroute the electric wires so that the pile driver could operate without touching the electric wires. When that work was completed the electric wires were replaced in essentially the same location from which they had been removed except that they were at a greater height than they previously were because taller poles were used.

The opening statement did not reveal that Capistrano required the general contractor, in the contract or otherwise, to take special precautions against the risk of harm from contact by a crane or other equipment with the electric wires.

At the time of the injury, Capistrano knew where the electric wires were located, knew the high voltage of the wires, knew that the general contractor's personnel would be working near those wires and knew the crane work was yet to be done to complete the bridge. Capistrano did not warn plaintiff of the dangers involved, did not provide a flagman to alert the crane operator when the crane reached the outer limits of the safety area, did not arrange for temporary removal of the electric wires and did nothing else to avoid the risk of harm which came to the plaintiff.

Capistrano recognizes that we must assume as true all of the facts stated in the opening statement and that the judgment cannot stand unless proof of all of those facts would entitle defendant to judgment as a matter of law.

■ The general rule is that an "employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." (Rest.2d Torts, § 409.) But as acknowledged in the comment to section 409, there are so many exceptions to the "general rule" that it is applied only "where no good reason is found for departing from it." The question we face is whether a judgment in favor of plaintiff would have been supported by one of the recognized exceptions to the general rule.

■ One such exception is: "One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer (a) fails to provide in the contract that the contractor shall take such precautions, or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions." (Rest.2d Torts, § 413.) The identical concept of work which, unless special precautions are taken, is likely to create during its progress a peculiar risk of physical harm to others is the basis for

liability under section 416 of the Restatement Second of Torts.[1] One basis for liability of the employer of an independent contractor stated in the former section is the failure of the employer to provide in the contract that the contractor shall take the requisite special precautions, whereas the latter section imposes liability on the employer, notwithstanding that he has so provided in the contract, if in fact the independent contractor fails to exercise reasonable care to take such precautions. Section 413 makes the employer of the independent contractor directly liable for the employer's own failure, whereas section 416 makes the employer vicariously liable for the negligence of the independent contractor. ■ An employee of an independent contractor is one to whom a duty is owed under section 413 (*Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708]) and section 416 (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245 [66 Cal.Rptr. 20, 437 P.2d 508]) by the employer of the independent contractor.

■ Whether the particular work which the independent contractor is to perform is likely to create during its progress a peculiar unreasonable risk of physical harm to others unless special precautions are taken is ordinarily a question of fact to be resolved by the trier of fact. The comment to section 413 states that the section "is concerned with special risks, peculiar to the work to be done, and arising out of its character, or out of the place where it is to be done, against which a reasonable man would recognize the necessity of taking special precautions. The situation is one in which a risk is created which is not a normal, routine matter of customary human activity, such as driving an automobile, but is rather a special danger to those in the vicinity, arising out of the particular situation created, and calling for special precautions. 'Peculiar' does not mean that the risk must be one which is abnormal to the type of work done, or that it must be an abnormally great risk. It has reference only to a special, recognizable danger arising out of the work itself."

Work of an independent contractor characterized by California courts as creating a peculiar unreasonable risk absent special precautions includes eradicating painted traffic lines on a street with the risk that a motorist will injure a workman (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245 [66 Cal.Rptr. 20, 437 P.2d 508]), repairing a cylindrical metal tank from the inside by forcing buckled metal outward with the risk that the metal would immediately spring inward again injuring a workman (*Ferrel* v. *Safway Steel Scaffolds* (1962) 57 Cal.2d 651 [21 Cal.Rptr. 575, 371 P.2d 311]), painting the inside of a tank with the risk of an explosion because of inade-

---

[1]The word "unreasonable" does not appear in section 416, but neither the comments nor the cases ascribe any significance to the omission.

quate air circulation. (*Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708]) and relining the inside of a sprinkler tank with the risk of an explosion because of inadequate air circulation (*McDonald* v. *City of Oakland* (1965) 233 Cal.App.2d 672 [43 Cal.Rptr. 799]).[2]

From the facts of the cited cases and the comment to section 413 of Restatement Second of Torts, it is difficult to imagine a type of work which would not permit a finding that an independent contractor's work involved a peculiar unreasonable risk of harm to one of his employees through the negligence of another, including another employee of the independent contractor. ■ The extent to which the employer of an independent contractor should be liable and the wisdom of imposing such liability have been seriously questioned. (*The Supreme Court of California, 1967-1968* (1968) 56 Cal.L.Rev. 1612 at p. 1762; Note (1963) 51 Cal.L.Rev. 245.) As an intermediate appellate court, however, we must apply the law as laid down by the Supreme Court.

■ In the case at bench a trier of fact could determine that building a a bridge requiring the use of a crane in close proximity to high voltage electric wires created a peculiar unreasonable risk of phyical harm to employees of the general contractor unless special precautions were taken.

The second element, i.e., whether Capistrano should have recognized that the work was likely to create such a risk, is also a question of fact to be resolved by the trier of fact. As noted in the comment to section 413, "the extent of the employer's knowledge and experience in the field of work to be done is to be taken into account; and an inexperienced widow employing a contractor to build a house is not to be expected to have the same information, or to make the same inquiries, as to whether the work to be done is likely to create a peculiar risk of physical harm to others, or to require special precautions, as is a real estate development company employing a contractor to build the same house." Here the employer of the independent contractor was a real estate developer. While the plaintiff stresses the fact that Capistrano caused the electric wires to be moved in order to permit a pile

[2]In *West* v. *Guy F. Atkinson Constr. Co.* (1967) 251 Cal.App.2d 296 [59 Cal.Rptr. 286] the employee of a subcontractor was injured in a fall from a scaffold. The court upheld a summary judgment in favor of the defendant general contractor because there was "no unreasonable risk of physical harm nor need of special precautions within the meaning of" section 413 of the Restatement Second of Torts. Since the comment to section 427 which imposes liability on the employer of an independent contractor for negligence of the contractor in doing work which is inherently or intrinsically dangerous indicates that "the use of a scaffold in painting the wall of a building" is of such character and since section 413 deals with work which is less dangerous, it is difficult to understand how the court's conclusion is justified. No petition for hearing by the Supreme Court was sought.

driver to set the piers for the bridge, it does not necessarily follow that Capistrano should have known that a crane would create a peculiar unreasonable risk of physical harm absent special precautions. It may be that the piers could not have been set by the pile driver unless the electric wires were removed, but clearly the crane could have done its job even though the electric wires were not removed. Moreover, the electric wires were at a greater height when the crane was being operated than they were prior to their removal to accommodate the pile driver.

On the other hand, Capistrano contracted to have the bridge built from which it must be inferred (for the purpose of ruling on the motion for a nonsuit) that it knew what was involved in the construction. Capistrano knew where the electric wires were located with relation to the bridge and it "was fully aware of the fact that there was yet crane work to be done with respect to the building of this bridge." We think that the facts disclosed by the opening statement would permit a trier of fact to conclude that Capistrano should have recognized that the work was likely to create, during its progress, a peculiar unreasonable risk of physical harm to the plaintiff and other employees of the general contractor.

Capistrano asserts in its brief that because the opening statement did not reveal that Capistrano "had any knowledge that a crane was being used and operated at the time [plaintiff] sustained his injuries" the requisite knowledge was lacking. If Capistrano had provided in the contract that the general contractor should take the requisite special precautions, Capistrano would not have been liable under section 413 of the Restatement Second of Torts, but if the contractor had not taken those precautions, Capistrano nonetheless would be liable under section 416 of the Restatement Second of Torts. The necessary implication of that consequence is that the employer of the independent contractor must keep apprised of the progress of work which at some stage is likely to create a peculiar unreasonable risk of physical harm absent special precautions so that the employer may take the special precautions if the independent contractor does not do so. If the crane work should have been recognized by Capistrano as likely to create a peculiar unreasonable risk of physical harm absent special precautions, liability cannot be avoided by Capistrano's lack of knowledge that the crane would be operated on December 9, 1964. (See Brooks, *Tort Liability of Owners and General Contractors for On-The-Job Injuries to Workmen* (1965) 13 U.C.L.A. L.Rev. 99 at p. 114.)

In the light of our conclusion that the opening statement was sufficient to indicate that plaintiff might have obtained judgment pursuant to section 413 of the Restatement Second of Torts as an exception to the gen-

eral rule, it is unnecessary for us to determine whether the opening statement was sufficient to state a cause of action under another exception (such as Rest.2d Torts, § 427).

The judgment is reversed.

Wood, P. J., and Thompson, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied January 6, 1971.