Roger G. JOHNS, Plaintiff-Appellant,

v.

NEW YORK BLOWER COMPANY, Defendant-Appellee.

No. 3–382A52.

Court of Appeals of Indiana, Third District.

Nov. 30, 1982.

Charles A. Sweeney, Jr., Sweeney, Butler & Simeri, South Bend, for plaintiff-appellant.

Arthur A. May, Thomas D. Blackburn, May, Oberfell, Helling, Lorber, Campiti & Konopa, South Bend, for defendant-appellee.

GARRARD, Judge.

This appeal arises from the trial court's ruling on New York Blower Co.'s (Owner) motion for summary judgment which deemed certain facts established and restricted trial to one remaining issue, and from the court's subsequent grant of owner's motion for judgment on the evidence.

Appellant Roger G. Johns (Johns) was employed as an iron worker by the Larson-Danielson Construction Co. (Contractor) and in June of 1977 was working on the erection of a building for the owner in LaPorte, Indiana. On June 21, 1977 Johns sustained personal injuries when he fell from the steel beam he was working on to the ground approximately thirty feet below.

Johns subsequently brought suit in two counts. Count I alleged that Johns' injuries resulted from the owner's carelessness and negligence in maintaining unsafe and unhealthful working conditions. In Count II Johns alleged that his injuries resulted from the owner's breach of its duty to supervise the progress of construction.

The owner filed a motion for summary judgment and the trial court denied the motion but held that the following facts appeared without controversy:

"1. That the Defendant, New York Blower Company, did not maintain the structure and is not liable under Section 422 of the restatement of torts second.

2. That the Defendant, New York Blower Company, did not control the safety precautions to the extent necessary to create a duty of reasonable care or to be responsible for the enforcement of OSHA regulations.

3. That the Defendant, New York Blower Company, employed the Plaintiff's employer and was not under a duty towards the Plaintiff to take precautions to avoid harm due to the nature of the acts to be performed for his employer."

The court also restricted the issues to be considered at trial to: "Whether or not the contract required work that was inherently dangerous."

Jury trial was held on September 29 and 30, 1981 and at the close of Johns' case-in-chief the owner orally moved for judgment on the evidence pursuant to Indiana Rules of Procedure, Trial Rule 50. The court granted this motion, finding that the remaining issue regarding Johns' allegation that working on steel beams without a safety net is inherently dangerous was not supported by the evidence.

The only issue argued on appeal is the grant of the Trial Rule 50 motion. Thus, any error in the court's ruling on the motion for summary judgment has been waived, and our review accepts the undisputed facts found by the court to exist.

The issue before us is whether the trial court erred in finding that there was no evidence of negligence on the part of the owner. Under the facts adduced at trial the question becomes whether there was sufficient evidence to create an issue of fact as to whether an iron worker working some thirty feet above the ground without a safety net below him is in an inherently or intrinsically dangerous occupation as that term is defined by Indiana law. If so, the question expands into an examination of the duty owed, and whether there was evidence of a breach of the duty that proximately caused Johns' injuries.

■ In reviewing the court's action in granting judgment on the evidence we must consider the evidence from the perspective favoring the non-moving party to determine whether there was introduced evidence of probative value on each element of the claim such that a reasonable jury might have found for the opponent of the motion. *Haidri v. Egolf* (1982), Ind.App., 430 N.E.2d 429.

■ As a prelude to deciding whether the trial court erred it is necessary to understand the relationship between the owner, the contractor, and Johns. In this regard certain pretrial admissions by Johns become important. In his response to requests for admissions, Johns admitted that: (1) he was employed by the contractor on the date of his injury, and (2) that he took instruction and direction from the contractor. These admissions support the trial court's characterization of the parties' relationship as one of owner-independent contractor rather than as one of master-servant. The characterization is important since Indiana courts follow the rule that:

"Generally, one is not liable for the acts or negligence of another unless the relation of master and servant exists between them. Thus, where a party exercising independent employment causes injury to another, the person employing that party will not be liable in damages for injury resulting from such party's wrongful acts or omissions. *Allison v. Huber, Hunt and Nichols, Inc.* (1977), 173 Ind.App. 41, 362 N.E.2d 193."

*Perry v. Northern Ind. Pub. Serv. Co.* (1982) Ind.App., 433 N.E.2d 44, 46. *See also Prest-O-Lite Co. v. Skeel* (1914), 182 Ind. 593, 106 N.E. 365, 367; *Cummings v. Hoosier Marine Properties, Inc.* (1977), 173 Ind.App. 372, 363 N.E.2d 1266, 1277; *Hale v. Peabody Coal Co.* (1976), 168 Ind.App. 336, 343 N.E.2d 316, 320–21; *Jones v. Indianapolis Power & Light Co.* (1973), 158 Ind.App. 676, 304 N.E.2d 337, 343; *Scott Const. Co. v. Cobb* (1928), 86 Ind.App. 699, 159 N.E. 763, 765.

■ Johns does not dispute the existence of the general rule; rather he argues that the owner should be liable for his injuries according to the "intrinsically dangerous work" exception to that rule. This exception was first noted in *Scott, supra,* 159

N.E. at 765 where the court said the general rule "... does not apply in the following cases: (1) Where the contract requires the performance of work intrinsically dangerous; ...." *See also Perry,* 433 N.E.2d at 47; *Cummings,* 363 N.E.2d at 1274; *Jones,* 304 N.E.2d at 343–44. This exception, like others to the general rule,[1] exemplifies a situation where liability may not be delegated to an independent contractor. *Perry,* 433 N.E.2d at 47.

The "intrinsically dangerous work exception" has been discussed in several Indiana cases. In *Jones, supra,* the court said:

"Intrinsic or inherent danger possesses a special meaning in the law. It can not be used to describe circumstances and conditions which are not natural, everpresent components of the instrumentality itself, but are merely dangers arising from casual or collateral negligence of others. *Neal v. Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280; Black's Law Dictionary, p. 921 (West 4th Ed. 1951)."

304 N.E.2d at 344. In *Cummings, supra,* the court said:

"[I]nherently dangerous means that the danger exists in the doing of the activity regardless of the method used. It is a risk intrinsic to the accomplishment of the task and not simply a danger arising from a causal or collateral negligence of others. *Neal, Admr. v. Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280. Thus liability under the inherently dangerous exception is imposed on a rationale sounding in strict liability as would exist for example in blasting."

363 N.E.2d at 1275.

Appellants who have argued for expansion of the "intrinsically dangerous work" exception have not fared well in Indiana courts. In upholding the trial court's grant of a defendant's motion for summary judgment, the court in *Perry* held that welding metal clips onto a fan housing approximately 20 feet above ground without using a scaffold or other safety apparatus was not inherently dangerous work. 433 N.E.2d at 47. Sustaining the trial court's grant of the defendant's motion for judgment on the evidence in *Cummings,* the court held that excavation of sewer trenches eighteen feet deep and five feet wide was not inherently dangerous work. 363 N.E.2d at 1275. In *Hale* the court upheld summary judgment for the defendant and ruled that attaching metal panels to a conveyor belt housing twenty five feet above the ground was not inherently dangerous work. 343 N.E.2d at 322. *Jones,* affirming the trial court's grant of defendant's motion for judgment on the evidence, held that use of a hoist to lift men approximately 100 feet above ground was not inherently dangerous work. 304 N.E.2d at 342.

Johns claims that working on a steel beam thirty feet above ground without safety netting should be deemed inherently dangerous work within the meaning of that exception to the general rule of non-liability. He cites *Kelley v. Howard S. Wright Const. Co.* (1978), 90 Wash.2d 323, 582 P.2d 500 decided by the Supreme Court of Washington. This case also involved a fall from a steel beam giving rise to a suit against the general contractor. In its decision the court found four alternative grounds for liability, including a common law claim for inherently dangerous work.[2] It deemed work inherently dangerous whenever the

---

1. The other exceptions are: Where a party is by law or contract charged with a specific duty; where the act will create a nuisance; where the act to be performed will probably cause injury to others unless due precaution is taken to avoid harm; and where the act to be performed is illegal.

2. The other three grounds were express contractual and statutory duty and that the general contractor had retained actual control of the work. None of these additional grounds are argued in the present appeal. Subsequently, in *Tauscher v. Puget Sound Power & Light Co.* (1981), 96 Wash.2d 274, 635 P.2d 426 the Washington Supreme Court in a 5–4 decision characterized *Kelley* as based principally upon the control retained by the contractor. It applied the general rule of non-liability in a suit against the owner where plaintiff's decedent had come in contact with a high voltage line while working on one of the defendant's poles.

work by its very nature creates some peculiar risk of injury which the defendant has reason to know of.

We decline to adopt this view. We base our conclusion on two reasons.

First, our courts have held that work is not "inherently dangerous" if the risk of injury can be eliminated or significantly reduced by taking safety precautions. Secondly, we conclude that the inherently dangerous work exception is not applicable to employees of an independent contractor.

■ In *Hale, supra,* the court said:

"[A]n instrumentality is not considered intrinsically dangerous if the risk of injury involved in its use can be eliminated or significantly reduced by taking proper precautions. *Denneau v. Indiana & Michigan Electric Company* [(1971), 150 Ind. App. 615, 277 N.E.2d 8.]"

343 N.E.2d at 322. *See also Perry, supra,* 433 N.E.2d at 47.

In the present case the risk of injury could have been eliminated through the use of safety, or tag, lines.[3] On cross-examination Johns, himself, testified that had he been wearing his tag line on the day of his injury he never would have fallen to the ground. Ben Smith, Jr., one of Johns' co-workers, gave similar testimony. It also appears that OSHA regulations, specifically 29 CFR 1926, 105(a), recognize safety belts as an alternative method of reducing the risk of injury involved in working on steel beams at heights in excess of 25 feet.[4]

**3.** A safety or tag line is a nylon rope that is connected at one end to a tool belt worn by the worker and at the other end to a column or beam.

**4.** 29 CFR 1926, 105(a) provides:
"(a) Safety nets shall be provided when workplaces are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical."

**5.** *Pierce v. United States* (6th Cir.1955), 142 F.Supp. 721; *McDonald v. City of Oakland* (1967), 255 Cal.App.2d 816, 63 Cal.Rptr. 593; *Van Arsdale v. Hollinger* (1968), 68 Cal.2d 245, 66 Cal.Rptr. 20, 437 P.2d 508; *Vannoy v. City of Warren* (1968), 15 Mich.App. 158, 166

From the testimony of Johns and Smith and the OSHA regulation, the trial court could conclude that the risk of injury involved in working on a steel beam without safety netting can be eliminated or significantly reduced through the use of safety lines, and thus that Johns had failed to introduce sufficient evidence to establish that his work was "inherently dangerous" within the meaning of the Indiana decisions.

■ There is, however, an alternative ground for upholding the trial court's grant of the owner's TR 50 motion. We believe that the liability of a contractee/owner under the inherently dangerous work exception does not extend to employees of the independent contractor performing the work.

We do not reach this conclusion without recognizing that there exists some difference of opinion on the applicability of this exception to such employees.

In *King v. Shelby Rural Elec. Coop. Corp.* (Ky.1973), 502 S.W.2d 659, *cert. denied* 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 235, the Kentucky Court of Appeals noted that California, Michigan and Tennessee have held that an employee of an independent contractor is within the class of persons protected,[5] 502 S.W.2d at 661, and that Arizona, Florida, New Mexico, Pennsylvania, Texas, Washington, and Wisconsin have adopted the contrary view,[6] 502 S.W.2d at 662.

N.W.2d 486. *See also Tauscher v. Puget Sound Power & Light Co.* (1981), 96 Wash.2d 274, 635 P.2d 426, 429.

**6.** *Parsons v. Amerada Hess Corporation* (10th Cir.1970), 422 F.2d 610; *Hurst v. Gulf Oil Corporation* (5th Cir.1958), 251 F.2d 836; *Welker v. Kennecott Copper Co.* (1965), 1 Ariz.App. 395, 403 P.2d 330; *Florida Power and Light Co. v. Price* (Fla.1964), 170 So.2d 293; *Hader v. Coplay Cement Mfg. Co.* (1963), 410 Pa. 139, 189 A.2d 271; *Humble Oil & Refining Co. v. Bell* (Tex.Civ.App.1943), 180 S.W.2d 970; *Humphreys v. Texas Power and Light Co.* (Tex. Civ.App.1968), 427 S.W.2d 324; *Epperly v. City of Seattle* (1965), 65 Wash.2d 777, 399 P.2d 591; and *Potter v. City of Kenosha* (1955), 268 Wis. 361, 68 N.W.2d 4. *See also Tauscher, supra,* 635 P.2d at 429.

Of the cases that have upheld liability, *Van Arsdale v. Hollinger* (1968), 68 Cal.2d 245, 66 Cal.Rptr. 20, 437 P.2d 508 is instructive. In that case the California Supreme Court said:

> "There are numerous considerations which have led courts to depart from the rule of nonliability of a private employer for the torts of an independent contractor. Some of the principal ones are that the enterprise, notwithstanding the employment of the independent contractor, remains the employer's because he is the party primarily to be benefited by it, that he selects the contractor, is free to insist upon one who is financially responsible, and to demand indemnity from him, that the insurance necessary to distribute the risk is properly a cost of the employer's business, and that the performance of the duty of care is of great importance to the public. (See Prosser on Torts, supra, p. 481; 2 Harper and James, The Law of Torts (1956), p. 1406.)" [7]

66 Cal.Rptr. at 25, 437 P.2d at 513.

Despite these considerations there is persuasive reasoning that supports non-liability for the contractee/owner. These reasons were set out in *King*. The court first noted:

> "Nothing in the discussions of Sections 413, 414, 416 and 427 of the Restatement, Torts 2d, indicates that an employee of an independent contractor is within the class of 'others' protected by those sections. All of the illustrations set out in the Restatement refer to liability of the employer of an independent contractor to third parties other than employees of the independent contractor.
>
> Tentative Draft # 7 of the Restatement, Torts 2d, contained a special note to Chapter 15 which dealt with liability of employers for the conduct of independent contractors which contained the following language:

> 'The other class of plaintiffs not included in this Chapter consists of the employees of the independent contractor. As the common law developed, the defendant who hired the contractor was under no obligation to the servants of the contractor, and it was the contractor who was responsible for their safety. The one exception which developed was that the servants of the contractor doing work upon the defendant's land were treated as invitees of the defendant, to whom he owed a duty of reasonable care to see that the premises were safe. This is still true. See § 343. In other respects, however, it is still largely true that the defendant has no responsibility to the contractor's servants. One reason why such responsibility has not developed has been that the workman's recovery is now, with relatively few exceptions, regulated by workmen's compensation acts, the theory of which is that the insurance out of which the compensation is to be paid is to be carried by the workman's own employer, and of course premiums are to be calculated on that basis. While workmen's compensation acts not infrequently provide for third-party liability, it has not been regarded as necessary to impose such liability upon one who hires the contractor, since it is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him.

> Again, when the Sections in this Chapter speak of liability to 'another' or 'others,' or to 'third persons,' it is to be understood that the employees of the contractor, as well as those of the defendant himself, are not included.'

---

**7.** Strictly speaking, this case did not involve the inherently dangerous work exception. In terms of the RESTATEMENT (SECOND) TORTS provisions which the court uses, this was a section 416 case (work dangerous in absence of special precautions) not a section 427 case (negligence as to danger inherent in the work). The same may be said about the Michigan and Tennessee cases cited in *King*. However, the RESTATEMENT recognizes the similarity and interchangeability of these two sections. Thus the logic of *Van Arsdale* should still be applicable.

Although this language is not contained in the Restatement, as finally adopted, we think it is persuasive.' "
502 S.W.2d at 662.

In summary, the *King* court observed that the question of the amount of actual control of a project retained by an owner most accurately relates to the issue of whether or not the relationship established is one of independent contractor. If, as before us, it is, then there appear to be two valid reasons for refusing to extend the "inherently dangerous work" liability of the owner to employees of the independent contractor.

First, the principal reason for the development of the liability doctrine where independent contractors were involved was to prevent the employer-owner from escaping liability on inherently dangerous work or shifting that liability to his potentially less solvent contractor. Under modern law the employees of the contractor in the vast majority of instances are covered by Workmen's Compensation laws, and the owner does not escape liability since, in effect, he pays the premium for the Workmen's Compensation coverage as part of his contract price.

Secondly, had the owner's own employee been injured performing the work, the owner's liability would be limited by the Workmen's Compensation laws. There does not appear to be any valid reason to subject the owner to greater liability for employing an independent contractor to perform the work than he would have had if he had employed his own servants.

We are persuaded by the court's reasoning in *King,* and hold that an alternative ground sustaining the trial court's judgment is that the "inherently dangerous work" exception to the general rule of nonliability had no application to Johns because he was an employee of the independent contractor employed to perform the work in question. Cf. *Hale v. Peabody Coal Co.* (1976), 168 Ind.App. 336, 343 N.E.2d 316, n. 1.

For these reasons the judgment is affirmed.

HOFFMAN, P.J., concurs.

STATON, J., concurs in result and files separate opinion.

STATON, Judge, concurring in result.

I concur in result since coverage by workmen's compensation is irrelevant to the issue of liability. If there is a nondelegable duty, a third party is liable for the injuries and damages resulting regardless of workmen's compensation coverage. *Denneau v. Indiana & Michigan Electric Company* (1971), 150 Ind.App. 615, 277 N.E.2d 8. Workmen's compensation coverage in many cases may be grossly inadequate where a non-delegable duty is involved.