[Civ. No. 38571. Second Dist., Div. Five. Dec. 21, 1973.]

JANETTA M. YOUNG, Individually and as Administratrix, etc., Plaintiff and Appellant, v. ARO CORPORATION et al., Defendants and Respondents.

## Counsel

Hirson & Horn, William P. Camusi and Theodore A. Horn for Plaintiff and Appellant.

Cummins, White & Breidenbach, Joseph H. Cummins and W. F. Rylaarsdam for Defendants and Respondents.

## Opinion

**KAUS, P. J.**—Wrongful death. After a judgment in favor of defendant, Aro Corporation, plaintiff Janetta Young as administratrix of the estate of Carl C. Young, appeals.

### FACTS

On September 9, 1964, Carl Young, plaintiff's decedent, was employed by U.S. Filter Company as a welder. On that day he received a serious injury while using a portable grinder manufactured, sold and later repaired and serviced by defendant Aro Corporation ("Aro"). A high speed abrasive wheel attached to the grinder disintegrated. Young died from the effects of the injuries a few weeks later.

The evidence concerning the cause or causes for the failure of the grinder is highly complex and technical. In brief, plaintiff's theory was that the accident happened because the grinder, which should not have been operating at a speed in excess of about 6,000 rpm, was in fact turning at a much higher rate. Further, the grinder was not equipped with a guard which, had it been in place or installed, would have prevented the fatal injury.

The grinder had been purchased from one of Aro's distributors in Janu-

ary 1962. In June 1964, a few months before the accident, it had been returned to Aro with the following request: "Repair and Reduce to 4500 rpm." No limitations as to method or cost were placed on Aro. The grinder was returned to U.S. Filter a week later. There was much conflicting evidence on whether or not Aro accomplished the repair job. All questions of negligence on the part of Aro, either as manufacturer or as repairer, were submitted to the jury on instructions concerning which no claim of error is raised. Also submitted to the jury was the issue of Young's contributory negligence. There was also a good deal of evidence concerning the negligence of Young's employer, U.S. Filter, which had intervened in the action below in order to recover workmen's compensation benefits paid. It, incidentally, has not appealed.

Disregarding a great deal of conflicting evidence, the following does appear from the record: When the machine was returned after the June 1964 repair job, its governor was so badly worn that it did not hold the speed down to 4,500 rpm.[1] Plaintiff's theory is that Aro's failure to install a new governor caused the grinder to be defective when returned.

It is undisputed that in spite of the worn condition of the governor, its speed could have been reduced by making adjustments on a certain bushing. Plaintiff's expert, however, characterized such an adjustment as an "artificial crutch."

On the other hand there was much evidence that the grinder did run at about 4,500 rpm when it was returned.

The grinder, as noted, was not equipped with a guard; the employer's failure to so equip it violated a safety order. The tool carried a warning on the nameplate stating, "Check rpm with each wheel change." The plate was, however, extremely scratched and worn, the writing quite small and psychologically hidden in that it appeared under a heading "Capacity" followed by two lines of technical description. In any event, no equipment with which plaintiff's husband could have checked the speed was available to him.[2]

There was evidence that as the grinder increased its speed due to wear, the effect would be noticeable to the operator through the sound of the grinder, the emission of sparks, and an absence of power surge.

[1] It was Aro's theory that the worn condition of the governor was probably due to U.S. Filter's lack of maintenance, particularly lubrication, during the period before and after the machine was returned to it in June 1964.

[2] The only tachometer available at U.S. Filter was the personal property of decedent's lead man.

## DISCUSSION

Plaintiff's contentions on appeal involve chiefly the issues of her husband's contributory negligence, the admissibility of a certain report, and defendant's strict liability as a repairer. Since the judgment must be reversed because of an error in the instructions on contributory negligence, we reach that issue first.

■ Plaintiff contends that there was no evidence to justify instructing the jury on Young's contributory negligence. The contention is without merit. The defense introduced evidence, summarized above, that increases in the speed of the tool are noticeable to the operator. Although, arguably, the maintenance practices of Young's employer made speeding grinders the rule rather than the exception, Aro was entitled to have the jury evaluate the evidence on contributory negligence for what it was worth.[3]

Plaintiff next contends that the court erred in refusing to soften the impact of instructing on the issue of contributory negligence by giving BAJI No. 3.40, requested by her. The instruction reads as follows: "When a person's lawful employment requires that he work in a dangerous location or a place that involves unusual possibilities of injury, *or requires that in the line of his duty he take risks which ordinarily a reasonably prudent person would avoid,* the necessities of such a situation, insofar as they limit the caution that he can take for his own safety, lessen the amount of caution required of him by law in the exercise of ordinary care." (Italics added.)

That BAJI No. 3.40 correctly states the law is not open to doubt. (*Austin* v. *Riverside Portland Cement Co.,* 44 Cal.2d 225, 239 [282 P.2d 69].) Further, it is well established that the failure to instruct with respect to the principle embodied in the instruction may be reversible error. (*Fry* v. *Sheedy,* 143 Cal.App.2d 615, 627-628 [300 P.2d 242].) We think that is the case here. The evidence of contributory negligence on which defendant relied sounds fairly substantial in the abstract. Reasonable men read nameplates on tools, listen for unusual sounds, notice the emission of sparks and suspect the significance of an absence

---

[3]We have inspected the nameplate on the grinder in question. The part of the legend on which Aro relies as additional evidence of contributory negligence is, as stated in this opinion, very hard to read. Further, as noted, the context in which it appears is such that it fails to draw attention to itself as a warning. (Cf. *Hutchinson* v. *Revlon Corp.,* 256 Cal.App.2d 517, 525 [65 Cal.Rptr. 81].) Without deciding the question, it is fair to state that if the legend on the nameplate were the only evidence of contributory negligence, it would be difficult to hold that it amounted to more than a scintilla.

of power surge. In practice, however, reasonable men who are paid to give at least part of their attention to their job, particularly those whose employer has habituated them to a particular risk by never acquainting them with the attributes of safe working conditions, may do nothing of the sort. BAJI No. 3.40 would have placed defendant's claims of contributory negligence in the proper legal perspective. We feel compelled to hold that the failure to give the instruction was prejudicial.

Two remaining issues will inevitably arise at the retrial. It is, therefore, appropriate to discuss them. (Code Civ. Proc., § 43.)

■ The simpler one concerns the claims admissibility of an accident report prepared by an agent of Aro's insurer which contained evidence favorable to plaintiff's theory concerning the cause of the overspeeding.

Plaintiff relies on section 1224 of the Evidence Code, the successor to former section 1851 of the Code of Civil Procedure. The former section was interpreted in *Markley* v. *Beagle*, 66 Cal.2d 951, 957-960 [59 Cal.Rptr. 809, 429 P.2d 129]. Both sections permit the admission of hearsay evidence in certain situations where an indemnitor is sued and the evidence would be admissible against his indemnitee. Plaintiff is attempting to reverse the direction of this one-way street to admissibility: he would have section 1224 say, in effect, that whatever would be admissible against the indemnitor, may be successfully offered against the indemnitee. That is not the law.

■ A more difficult issue which will arise at the retrial relates to the question whether the jury should have been instructed on the doctrine of strict liability based on the theory that such liability applies to any manufacturer's failure "to repair properly," if he is in the business of repairing as well as manufacturing.[4]

We need not decide whether the instruction requested was too broad. The specific facts in this case, if accepted by the jury, entitle plaintiff to a strict liability instruction on what, by now, are rather traditional grounds.

A few additional facts, not heretofore related, are helpful. The grinder in question is one of what defendant Aro's catalog calls the "8300-Series." The one in question was originally sold as a model 8300-S6. This model is rated as having a speed of 6,000 rpm.[5]

---

[4]We note that plaintiff did not urge strict liability based on a defect in the grinder when it was first sold to decedent's employer.

[5]Both the model number and the 6,000 rpm speed are stenciled to the nameplate already mentioned. (See fn. 3, *supra*.)

Another model, the 83000-S4, is rated at 4,500 rpm. Changing an S-6 grinder—6,000 rpm—to an S-4 grinder—4,500 rpm—is a relatively simple job, requiring in the main the substitution of one spring.[6] It will be recalled that when the grinder was returned to Aro in June 1964, the instructions read "repair and reduce to 4,500 rpm" and that Aro was given carte blanche on how to accomplish that objective.[7] In substance what happened was that U.S. Filter requested the manufacturer of 8300-S4 grinders to deliver such a grinder to it. To look on Aro simply as a repairer who happens to be also the manufacturer dilutes the facts of this case.

It is true that on the theory presented by plaintiff at the first trial, the reason for over-speeding at the time of the accident was not that the exchange of springs had not been accomplished. It had. The problem, according to plaintiff's expert, was that the governor was so worn that it was incapable of helping the new spring do its job. There was, however, nothing in the instructions to Aro that would have negated its obligation to make sure that all parts of the grinder were in such shape as to make the reduction to 4,500 rpm effective.

Whatever may be the strict liability exposure of a repairer who also happens to be a manufacturer in general, this particular case appears to be well within the justification for manufacturers' strict liability as first put forward in the concurring opinion in *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 462 [150 P.2d 436]: "[P]ublic policy demands that responsibility be fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market. It is evident that the manufacturer can anticipate some hazards and guard against the recurrence of others, as the public cannot. . . ." (See also *Cronin* v. *J.B.E. Olson Corp.*, 8 Cal.3d 121, 129 [104 Cal.Rptr. 433, 501 P.2d 1153].) As the court explained in *Price* v. *Shell Oil Co.*, 2 Cal.3d 245, 251 [85 Cal.Rptr. 178, 466 P.2d 722]: "Such a broad philosophy evolves naturally from the purpose of imposing strict liability which 'is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves.'

[6]A green spring, intended to control the speed of a maximum of 6,000 rpm is removed; it is replaced by a blue one, which is supposed to hold the speed down to 4,500 rpm.

[7]An employee of U.S. Filter who caused the tool to be returned testified that the reason he ordered Aro to reduce the speed was that the 6,000 rpm rated speed of the grinder was as high as the certified speed for the "wheels" which U.S. Filter had and therefore he did not feel that 6,000 rpm was a safe speed at which to operate.

(*Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d 57, 63 [27 Cal.Rptr. 697, 377 P.2d 897].) [Footnote omitted.] Essentially the paramount policy to be promoted by the rule is the protection of otherwise defenseless victims of manufacturing defects and the spreading throughout society of the cost of compensating them."

Thus the accepted rationale of strict liability in California is that the responsibility for the consequences of defective products should rest on those who, as a class, are in the best position to make sure that such products never reach the consumer in the first place, but who can distribute the loss "among the public as a cost of doing business" (*Escola* v. *Coca Cola Bottling Co., supra,* 24 Cal.2d at p. 462) if they do. Plaintiff's theory of the facts fits comfortably into that mould.

It goes without saying that if the evidence at the retrial should justify an instruction on strict liability, the question of contributory negligence will be irrelevant, as far as that particular theory of liability is concerned. (*Luque* v. *McLean,* 8 Cal.3d 136, 145-146 [104 Cal.Rptr. 443, 501 P.2d 1163].)

The judgment is reversed.

Stephens, J. and Ashby, J., concurred.

A petition for a rehearing was denied January 18, 1974, and the petitions of the appellant and the respondents for a hearing by the Supreme Court were denied February 14, 1974.