[Civ. No. 43838. Second Dist., Div. One. Feb. 10, 1975.]

GOVERNMENT EMPLOYEES INSURANCE COMPANY, Plaintiffs and Respondents, v.
CARRIER INSURANCE COMPANY et al., Defendants and Appellants.

224

**COUNSEL**

Staitman & Snyder and Jack M. Staitman for Defendants and Appellants.

Stockdale, Peckham, Estes, Ramsey, Lawler & Iorillo and John Henry Peckham for Plaintiffs and Respondents.

**OPINION**

**HANSON, J.—**

### INTRODUCTION

This is a case of first impression involving a dispute between two insurance companies in a declaratory relief action as to whose policy is primary and whose is excess. One of the insurance policies covers the owner (lessor) of a passenger-type automobile, rented on a daily basis, while the other policy covers the operator (lessee).

### THE CASE

Plaintiff-respondents Government Employees Insurance Company (hereinafter Government Employees) and Henri Waksberg (hereinafter Waksberg) filed a "Complaint for Declaratory Relief," naming as defendants, appellants Carrier Insurance Company (hereinafter Carrier), Budget Rent-A-Car (hereinafter Rent-A-Car) and Rita Green (hereinafter Green).

The complaint alleges that plaintiff Waksberg rented a certain Rambler private passenger automobile for a three-day period from its owner, Rent-A-Car. While operating the Rambler, Waksberg was involved in an accident with a pedestrian, Green.

Government Employees sought a court declaration that Carrier's policy covering the automobile's owner, Rent-A-Car (lessor) was primary, while its policy covering the operator Waksberg (lessee) was excess for any claims Green may have against Waksberg.

The court below, following a submission on an agreed statement of facts, trial briefs and argument, held that Carrier's policy was primary and that Government Employees' was excess.

Defendants Carrier and Rent-A-Car appeal from the judgment.

### THE FACTS

On May 29, 1971, Waksberg rented a 1970 Rambler passenger automobile for a period of three days from its owner, Rent-A-Car, appellant herein. On the same day respondent Waksberg, while operat-

ing the automobile, was involved in an accident with Green, a pedestrian. As a result of this accident, Green made claims for injuries and damages against respondent Waksberg and appellant Rent-A-Car.

The liability insurance ·policy issued by respondent Government Employees covered Waksberg as the named insured and provided that it was excess on nonowned vehicles.

The insurance policy issued by appellant Carrier covered Rent-A-Car as a named insured, listed the automobile rented by Waksberg as a described, owned automobile, and provided insurance for persons using the vehicle with the permission of Rent-A-Car. It also contained an endorsement making it excess if there was any other insurance applicable to the insurable event.

## ISSUE

On appeal, Carrier and Rent-A-Car contend that, pursuant to Insurance Code section 11580.9, subdivision (b), it is conclusively presumed that a policy of automobile liability insurance covering a named insured automobile owner engaged in the business of renting for a profit private passenger automobiles on a day-to-day basis is excess over the insurance coverage of the driver of that automobile. They base their argument on the theory that such an automobile is a "commercial vehicle" within the meaning of Vehicle Code section 260, subdivision (a) as used in section 11580.9, subdivision (b) of the Insurance Code.

## DISCUSSION

At all times mentioned herein section 11580.9 of the Insurance Code was in full force and effect. This section of the code, as recently amended by the Legislature (Stats. 1970, ch. 300, § 7, p. 576), was intended to resolve conflicts arising where there is more than one policy applicable to a particular loss.[1]

---

[1]Section 11580.8: "The Legislature declares it to be the public policy of this state to avoid so far as possible conflicts and litigation, with resulting court congestion, between and among insured parties, insureds, and insurers concerning which, among various policies of liability insurance and the various coverages therein, are responsible as primary, excess, or sole coverage, and to what extent, under the circumstances of any given event involving death or injury to persons or property caused by the operation or use of a motor vehicle.

"The Legislature further declares it to be the public policy of this state that Section 11580.9 of the Insurance Code expresses the total public policy of this state respecting the

Subdivision (d) of section 11580.9 provides: "(d) Except as provided in subdivisions (a), (b), and (c), where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise; it shall be conclusively presumed that the insurance afforded by that policy in which such motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess."

Appellants Carrier and Rent-A-Car assert that the exception appearing in subdivision (b) of Insurance Code section 11580.9 renders its policy excess, which provides in material part: "Where two or more policies are applicable to the same loss, and one of such policies affords coverage to a named insured engaged in the business of renting or leasing commercial vehicles without operators, as the term 'commercial vehicles' is used in Section 260 of the Vehicle Code, or the leasing of any other motor vehicle for six months or longer, it shall be conclusively presumed that the insurance afforded by such policy to a person other than the named insured or his agent or employee shall not be primary, but shall be excess . . . ."

Appellants argue that Rent-A-Car was engaged in the business of renting "commercial vehicles," as defined by section 260 of the Vehicle Code, and therefore is the beneficiary of the subdivision (d) exception to the general rule stated in section 11580.9 of the Insurance Code.

Section 260 of the Vehicle Code provides in part: "(a) A 'commercial vehicle' is a vehicle of a type required to be registered under this code used or maintained for the transportation of persons for hire, compensation, or profit or designed, used, or maintained primarily for the transportation of property. [¶] (b) Passenger vehicles which are not used for the transportation of persons for hire, compensation, or profit and house cars are not commercial vehicles."

The appellants argue that the vehicle in question meets both the tests of a "commercial vehicle," i.e., (1) it is required to be registered; and (2) it is a vehicle used for the transportation of persons for profit. They base

order in which two or more of such liability insurance policies covering the same loss shall apply, and such public policy is not to be changed or modified by any provision of the Vehicle Code except in those express cases where the requirements of Article 2 (commencing with Section 16450) of Chapter 3 of Division 7 of the Vehicle Code apply with regard to a policy of liability insurance certified as provided in Section 16431 of the Vehicle Code."

their interpretation of the statutory definition of "commercial vehicles" on the theory that the phrase "hire, compensation or profit" modifies the word "vehicle" and not the term "transportation." This, according to the appellants, is demonstrated by the fact that the subject of the sentence, as well as the subject matter of the statute is "vehicle" and not "transportation." The appellants reason the act of renting a passenger automobile for consideration places the vehicle in the commercial category.

The court below placed a different interpretation on section 11580.9, subdivision (b) of the Insurance Code. The trial court pointed out such a "construction makes the wording of subdivision (b) redundant. That provision speaks of 'renting or leasing commercial vehicles'. If renting or leasing is what makes the vehicle a commercial vehicle, there is no need to use the word 'commercial'. It would be sufficient to use the word 'vehicle' or 'automobile used for transporting persons'."

"Furthermore," the trial court said, "subdivision (b) speaks of 'the leasing of any other motor vehicle for six months or longer'. Vehicle Code Section 260, subdivision (a) encompasses vehicles used for carrying persons for hire and the transportation of property. If the act of leasing those vehicles makes them commercial vehicles, what other types of motor vehicles are there that one might lease for six months or longer?"

We conclude that the lower court's construction of Vehicle Code section 260 more reasonably conforms to the legislative intent and that the term "for hire" modifies the word "transportation," so that a commercial vehicle is one in which persons or property are transported for hire. Thus, "commercial vehicles" are of two types: (1) those put to the use of transporting persons for hire, and (2) those designed, used or maintained primarily for the transportation of property. In other words, vehicles used for the traditional purposes of public livery or conveyance, such as buses, taxicabs or other vehicles functioning as common carriers or otherwise, operate for a profit. Under appellants' reasoning, the act of renting a passenger automobile for consideration places the vehicle in the commercial category. We hold the fact that a vehicle is hired is not enough to make the vehicle "commercial." In the context of section 11580.9, subdivision (b) of the Insurance Code, the predominate factor which determines whether a vehicle is "commercial" is apparently the use the lessee makes of the vehicle.

Apparently the Legislature intended to spell out that when one hires out a vehicle for profit he has the responsibility of protecting the public

for losses incurred in the pursuit of that business by casting on the owner's insurer of the automobile the responsibility of affording primary coverage. This comports with the rationale in *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 462 [150 P.2d 436, 441], and *Young* v. *Aro Corp.*, 36 Cal.App.3d 240, 247 [111 Cal.Rptr. 535, 539], that one engaged in a business for profit is in the best position to distribute the loss "among the public as a cost of doing business."

The exceptions under Insurance Code section 11580.9 buttress the logic of this construction of the general rule set forth in subdivision (d) of that section. It is not until the hirer relinquishes control of the automobile for longer than six months, or until the person operating the vehicle is *himself* making a profit thereby, that the owners' insurance is no longer primary. The owner must, in the first instance, remove himself from the control of the automobile on a long-term basis, for no less than six months, in order that his insurance not be made primary coverage. It is common knowledge that the long-term leases are often entered into for business reasons for the purpose of obtaining a financial advantage by way of a tax write-off which could be considered akin to a profit or where the operator leases a vehicle for use in his business as a necessary item of equipment to conduct his business.

CONCLUSION

Accordingly, having concluded (1) that the Rambler rented by Rent-A-Car to Waksberg was not a "commercial vehicle" within the meaning of section 260 of the Vehicle Code; (2) that although the Rambler was a private passenger car, the rental involved a short-term and not a long-term lease arrangement; and (3) taking cognizance of the rationale in *Escola* v. *Coca Cola Bottling Co., supra,* and *Young* v. *Aro Corp., supra,* we conclude that Carrier's policy covering the lessor (Rent-A-Car) is primary and Government Employees' policy covering the lessee (Waksberg) is excess.

Judgment affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied March 7, 1975, and appellants' petition for a hearing by the Supreme Court was denied April 10, 1975.