[Civ. No. 65963. Second Dist., Div. Four. Dec. 28, 1982.]

JERRY F. LENTHALL, Plaintiff and Appellant, v.
GOMER LOUIS MAXWELL, Defendant and Respondent.

## COUNSEL

Wendt, Mitchell & De La Motte, Wendt, Mitchell, De La Motte, Ronca & Woolpert and Dale C. Mitchell for Plaintiff and Appellant.

Hoge, Fenton, Jones & Appel and Clayton U. Hall for Defendant and Respondent.

## OPINION

**KINGSLEY, Acting P. J.**—Plaintiff appeals from a summary judgment against him in an action for personal injuries. We affirm.

Plaintiff is a police officer for the City of San Luis Obispo. In company with other officers of that city, he responded to an order to proceed to defendant's home, because of a report that, at that address, "a 415 Family With Weapons, possibly shots fired, was in progress." Arriving at the residence, he was shot and injured by defendant. The complaint, and plaintiff's answers to a request for admissions, claim that the shooting was intentional.

The trial court granted summary judgment for defendant on the theory that plaintiff's claim fell within the so-called "fireman's rule." We conclude that the decision was correct.

█ The fireman's rule began with a case holding that a fireman has no cause of action against a person who negligently started a fire, where the fireman was injured in attempting to put out the fire. The rule has since been extended to cover police officers, and has been applied where the defendant's action was "wanton and reckless." In some cases applying the rule, an appellate court has

remarked that the cases before them did not involve intentional acts directed against the fireman or policeman and that they were not deciding such a case.

In *Spargur* v. *Park* (1982) 128 Cal.App.3d 469 [180 Cal.Rptr. 257], an officer had stopped a car for speeding. He parked his motorcycle in front of the car which, however, continued to proceed, striking and injuring the officer. The court, in a two-to-one opinion, held that a summary judgment was improper because it could not be determined from the record whether defendant's car proceeded accidentally because of poor brakes or because of intentional failure to stop. The opinion seems to hold that the latter situation would not invoke the rule.

In *Hubbard* v. *Boelt* (1980) 28 Cal.3d 480 [169 Cal.Rptr. 706, 620 P.2d 156], a police officer was injured when, in chasing a speeding car, he was injured while trying to avoid debris in the highway. The Supreme Court, sustaining a summary judgment for defendant, distinguished a case where an officer, engaged in ticketing an illegally parked car, was struck and injured by another car which was speeding, said (at pp. 486-487):

"In the present case, however, no such independent act occurred. Plaintiff was injured while pursuing a speeding traffic violator, and in discharge of his official duty incurred the very risk which occasioned his presence at the accident scene."

In *Krueger* v. *City of Anaheim* (1982) 130 Cal.App.3d 166 [181 Cal.Rptr. 631], a police officer, acting as a security guard at a ball game, chased a man who ran across the playing field. A fight followed in which the officer was injured. The court held that the rule did not apply saying (at p. 172):

"Here the guard, a security officer in the employ of the city, was called upon to prevent an interference with the ballgame then in progress. He was called upon to eject a fan who was running through the playing area. The objective was not only to permit the game to continue but also to secure the safety of the public and the ball players using that area. The risk this guard would reasonably assume does not encompass the intentional battery which followed. Under those conditions, the officer and the city, which is required to provide him worker's compensation and disability compensation, should not be barred by an assumption of risk doctrine or fireman's rule but be able to recover the damages sustained."

In *Shaw* v. *Plunkett* (1982) 135 Cal.App.3d 756 [185 Cal.Rptr. 571], a police officer was engaged in arresting a suspected prostitute. Defendant (her customer) intentionally drove his automobile into and injured the officer. The court refused to apply the rule, saying (at p. 760):

"Here, it is apparent that the police officer's injuries were not proximately caused by conduct which necessitated his presence in the parking lot of the motel. . . ."

Our reading of the cases cited to us leads us to conclude as follows: (1) The rule does not apply to injuries inflicted by an independent *actor* not connected with the event bringing the officer to the place of injury; (2) the rule does not apply to injuries caused by conduct which the officer could not reasonably anticipate would occur by reason of his presence at the place of injury; (3) but that the rule does apply to injuries inflicted by a participant in the event bringing the officer to the place of injury and the act causing the injury is one which the officer should reasonably expect to occur while he was engaged in the duty bringing him to the place of injury.

As applied to the case before us, a police officer called to subdue a violent offense involving firearms, should reasonably anticipate that one of the persons whom he was called on to subdue might resist him by use of the firearms involved.

The judgment is affirmed.

Amerian, J., concurred.

**McCLOSKY, J.**—I respectfully dissent.

The majority, by its opinion today, extends the "fireman's rule" to bar recovery by a police officer or a firefighter who is injured or damaged by the *intentional act* of a participant in the event which brought the police officer or firefighter to the place of his injury. No California case has ever extended the "fireman's rule" to bar recovery against such intentional tortfeasor and I can see no reason in law or public policy for doing so.

Up until today in California, assumption of risk, where not recklessly entered into, or carried out, has not been a defense to the tort of intentionally inflicting injuries on another. To the contrary, our state has even recognized that "[w]hen a person's lawful employment requires that he work in a dangerous location or place that involves unusual possibilities of injury, or requires that in the line of his duty he take risks which ordinarily a reasonably prudent person would avoid, the necessities of such a situation, insofar as they limit the caution that he can take for his own safety, lessen the amount of caution required of him by law in the exercise of ordinary care." (See BAJI (6th ed. 1977) No. 3.40; *Austin* v. *Riverside Portland Cement Co.* (1955) 44 Cal.2d 225 [282 P.2d 69]; *McDonald* v. *City of Oakland* (1967) 255 Cal.App.2d 816 [63 Cal.Rptr. 593]; and *Young* v. *Aro Corp.* (1973) 36 Cal.App.3d 240 [111 Cal.Rptr. 535].)

The genesis of the "fireman's rule" was that it was but a part of the assumption of risk defense to a negligence cause of action based on the knowing and "voluntary assumption of that risk" by firefighters. Of course, the "voluntary" aspect of that assumption was almost always a myth. It is rather a requirement of employment by any firefighter who wants to be continued in that employment, and is but a manifestation of the legal and moral duty of such employment.

The court's language in *Bilyeu* v. *Standard Freight Lines* (1960) 182 Cal. App.2d 536 [272 P.2d 789], is instructive. In that case, a California Highway Patrol officer sued for injuries he sustained to his back while pushing heavy rolls of coiled steel off the travelled portion of a highway. This steel had fallen from a truck when its trailer upset due to its driver's negligence and constituted a danger to persons in vehicles on the highway. The defendant-driver and defendant-employer contended that the officer had assumed the risk and had been guilty of contributory negligence as a matter of law. The *Bilyeu* court concluded to the contrary stating: "The risk of injury involved under the evidence in this case was that incident to pushing and pulling a heavy object. The defense of assumption of risk 'is available when there has been a voluntary acceptance of a risk and such acceptance, whether express or implied, has been made with knowledge and appreciation of the risk.' (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 161-162 [265 P.2d 904].) The evidence justifies the conclusion that the plaintiff did not voluntarily accept the risk in question. He was under an obligation to clear the highway of obstructions. His choice, being dictated by a legal and moral duty, was not voluntary within the requirements of the doctrine. (*Ching Yee* v. *Dy Foon,* 143 Cal.App.2d 129, 138 [299 P.2d 668].)" (*Id.,* at pp. 544-545.)

The *Bilyeu* court rejected the defendants' claim of the officer's contributory negligence stating: "His work imposed upon him the obligation of clearing the highway in order to protect motorists using it from injury. The amount of care required of an ordinarily prudent person under such circumstances might well be less than that required of a person not acting under the demands of his work. [Citations.]" (*Id.,* at p. 545.) It stated the general rule of the rescue doctrine that, " 'where the negligence of a defendant has imperiled human life, a person who takes such steps as are reasonably necessary to rescue or protect those imperiled is not contributorily negligent in voluntarily leaving a place of safety and incurring danger if he does not act with a recklessness which would not be warranted, under the circumstances, in the judgment of a prudent man.' (*Petersen* v. *Lang Transp. Co.,* 32 Cal.App.2d 462, 467 [90 P.2d 94]; *Henshaw* v. *Belyea,* 220 Cal. 458, 468 [31 P.2d 348].)"

Fifteen years after *Bilyeu,* in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393], our Supreme Court abol-

ished the defense of assumption of risk to the extent that it is merely a variant of the former doctrine of contributory negligence, subsuming it under the general process of assessing liability in proportion to negligence. The *Li* court states at pages 824-825 that "[a]s for assumption of risk, we have recognized in this state that this defense overlaps that of contributory negligence to some extent and in fact is made up of at least two distinct defenses. 'To simplify greatly, it has been observed . . . that in one kind of situation, to wit, where a plaintiff *unreasonably* undertakes to encounter a specific known risk imposed by a defendant's negligence, plaintiff's conduct, although he may encounter that risk in a prudent manner, is in reality a form of contributory negligence . . . . Other kinds of situations within the doctrine of assumption of risk are those, for example, where plaintiff is held to agree to relieve defendant of an obligation of reasonable conduct toward him. Such a situation would not involve contributory negligence, but rather a reduction of defendant's duty of care.' (*Grey* v. *Fibreboard Paper Products Co.* (1966) 65 Cal.2d 240, 245-246 [53 Cal.Rptr. 545, 418 P.2d 153]; see also *Fonseca* v. *County of Orange* (1972) 28 Cal.App.3d 361, 368-369 [104 Cal.Rptr. 566]; see generally, 4 Witkin, Summary of Cal. Law, Torts, § 723, pp. 3013-3014; 2 Harper & James, The Law of Torts, *supra,* § 21.1, pp. 1162-1168; cf. Prosser, Torts, *supra,* § 68, pp. 439-441.) We think it clear that the adoption of a system of comparative negligence should entail the merger of the defense of assumption of risk into the general scheme of assessment of liability in proportion to fault in those particular cases in which the form of assumption of risk involved is no more than a variant of contributory negligence. (See generally, Schwartz, *supra,* ch. 9, pp. 153-175.)" (Italics in original.)

In *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725 [144 Cal.Rptr. 380, 575 P.2d 1162], Justice Richardson, writing for a majority of the Supreme Court, applied the same principles of comparative negligence, including assumption of risk insofar as it is no more than a variant of contributory negligence, to strict liability cases. (*Id.,* at p. 734.) Yet, inexplicably our Supreme Court has seen fit, not only to preserve the "fireman's rule," but to extend its bar to police officers (see *Walters* v. *Sloan* (1977) 20 Cal.3d 199 [142 Cal.Rptr. 152, 571 P.2d 609]), and in *Hubbard* v. *Boelt* (1980) 28 Cal.3d 480, 485 [169 Cal.Rptr. 706, 620 P.2d 156], to bar recovery by a police officer or firefighter from a tortfeasor whose reckless, wilful or wanton conduct is a proximate cause of bringing such officer or firefighter to the place of his injury.

The *Hubbard* majority opinion, however, made it clear that in enunciating that rule, it was "*not* concerned with a claim for *intentionally* inflicted injuries to firemen or policemen." (Italics added.) (*Hubbard* v. *Boelt, supra,* at p. 485.)

The case at bench concerns such intentionally inflicted injuries. We, of course, are bound by the rule in *Hubbard* (see *Auto Equity Sales, Inc.* v.

*Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937]). We are not, however, bound to, nor should we extend the "fireman's rule" beyond its present limits to benefit tortfeasors who intentionally inflict injury on police officers or firefighters.

Yet, that is the anomalous result of what the majority does by its opinion today. It bars recovery against a tortfeasor whose conduct was a proximate cause of bringing the police officer plaintiff to the scene where that same tortfeasor then intentionally shot and injured the officer. At the same time this "development" leaves intact the existing right of a police officer or a firefighter who is "knowingly and voluntarily" encountering the same danger of being shot at the same scene, to recover from a passing motorist whose simple negligence causes his car to strike and injure such police officer or firefighter.

This disparate result is sometimes supposedly justified by the claim that the police officer or firefighter knowingly and "voluntarily" encounters that danger of intentional infliction of injury on his person, that he is paid a high salary and pension for encountering such risks, and that to allow recovery would flood the courts with cases.

The answer to these claims is that (1) the "lawful employment" of police officers and firefighters compel them to take these risks in the line of duty, and were they not to do so, they would not be allowed to continue in their employment; (2) they are not paid all that much considering the great risks they must take to protect society; (3) no other workers in California whose employment compels them to work in dangerous locations or under dangerous conditions are thereby completely and automatically barred from recovery against negligent, wanton or intentional third party tortfeasors who inflict injuries upon them. In fact, Labor Code section 3852 provides that " '[t]he claim of an employee for [worker's] compensation does not affect his claim or right of action for all damages proximately resulting from such injury or death *against any person other than the employer.*' (Italics added.) (See, e.g., *Baugh* v. *Rogers* (1944) 24 Cal.2d 200, 214 [181 P.2d 387]; *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 69 [17 Cal.Rptr. 369, 366 P.2d 641]; cf. *Walters* v. *Sloan, supra,* 20 Cal.3d 199, 203, fn. 3.)" (*Hubbard* v. *Boelt, supra,* 28 Cal.3d 480, 491 (dis. opn. of Tobriner, J.).)

Lastly, the spectre of a flood of cases in the event of the abolition of the "fireman's rule" is in my opinion, grossly exaggerated. Liability insurance indemnifying one against his own intentional infliction of injuries on another, is not available except under the most extraordinary circumstances. (See Ins. Code, § 533; Civ. Code, § 1668; *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865 [151 Cal.Rptr. 285, 587 P.2d 1098]; *Nuffer* v. *Insurance Co. of North America* (1965) 236 Cal.App.2d 349 [45 Cal.Rptr. 918]; and *Evans* v.

*Pacific Indemnity Co.* (1975) 49 Cal.App.3d 537 [122 Cal.Rptr. 680].) History teaches us that in the absence of such insurance few suits will be filed against the great majority of intentional tortfeasors who are unable to respond in civil damages, which in turn will result in no great increased burden on the courts. As to the remaining small percentage of uninsured intentional tortfeasors who are able to respond in civil damages, I see no policy reason to bar recovery from them if they intentionally inflict injuries on police officers or firefighters carrying out the duties of their lawful employment.

If a police officer or a firefighter *unreasonably* proceeds to knowingly and *voluntarily* encounter the risk of physical injuries caused by the negligence, wilful or wanton misconduct of another, I believe his comparative negligence in so doing should be measured by the *Li-Daly* scheme of assessment of liability in proportion to fault. I know that the Supreme Court's rulings in *Walters* and *Hubbard* combined with the *Auto Equity Sales, Inc.* rule presently prohibit such a result against a negligent, reckless or wanton tortfeasor whose conduct brings a police officer or firefighter to the scene. I cannot, however, join in extending the pernicious cloak of the "fireman's rule" to benefit intentional tortfeasors.

I would therefore reverse the summary judgment.

Appellant's petition for a hearing by the Supreme Court was denied April 13, 1983. Bird, C. J., Kaus, J., and Reynoso, J., were of the opinion that the petition should be granted.