**Ronald LANG, et al., Respondents,**

v.

**Robert E. GLUSICA, Defendant and Third Party Plaintiff, Appellant,**

**Mark Jonassen, et al., Third Party Defendants, Respondents.**

**No. CO–85–1846.**

Court of Appeals of Minnesota.

June 3, 1986.

Review Granted Aug. 13, 1986.

Edward J. Matonich, Matonich & Persson, Chtd., Hibbing, for Ronald Lang, et al.

James T. Martin, Gislason, Martin & Varpness, Edina, for Robert E. Glusica.

Larry C. Minton, Dave Naughton, Naughtin, Mulvahill & Minton, Hibbing, for Mark Jonassen, et al.

Heard, considered, and decided by WOZNIAK, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

WOZNIAK, Judge.

This case presents a question concerning the parameters of the common law fireman's rule.[1] May a police officer, called to the scene specifically to assist in the arrest of a person resisting arrest and injured while attempting to subdue that person, recover damages for his personal injury

---

1. Minnesota Statutes section 604.06 (1984) abrogates the common law fireman's rule as applied to peace officers for all claims accruing on or after May 19, 1983, the Act's effective date. Section 604.06 was enacted, in part, to prevent the sometimes harsh results caused by the fireman's rule.

from that person? We conclude that such recovery is precluded by the fireman's rule, which bars recovery in certain tort causes of action by firemen and policemen injured during the course of their hazardous occupations. We reverse.

## FACTS

On December 1, 1980, Robert Glusica and his sixteen-year-old daughter Sharon had an argument in their home. Glusica was very upset that Sharon had been dating a nineteen-year-old boy who had dropped out of school. The dispute worsened when the boy arrived at the Glusica residence to pick up Sharon. Glusica threw his daughter out of the house and Sharon's boyfriend shook his fist at Glusica, threatening him. Sharon became frightened and telephoned the police. Meanwhile, Glusica and the boy exchanged heated words and were involved in a fistfight on the street.

Respondent Officer Mark Jonassen arrived at the Glusica residence to handle an unknown trouble call. He immediately directed Sharon and her boyfriend to go to the police station, in order to split up the disputants. Sharon and her boyfriend drove to the police station where Sharon initiated a citizen's complaint for assault against her father. Robert Glusica later pleaded guilty to simple assault.

Meanwhile, Officer Jonassen was unable to get Glusica under control. Jonassen testified that Glusica pushed him, swore at him, and threatened to get a gun. As Glusica started for the house, Jonassen sprayed him with mace to stop him. That failed to stop Glusica, and Jonassen called for assistance. Officer Donald Slossen arrived at the scene, and at that time it was learned by radio that Sharon had signed the citizen's complaint for the assault. The two officers went into the house and informed Glusica of the complaint. However, Jonassen testified that they retreated after Glusica stated he had a gun and began reaching around a doorsill. The two officers called for more assistance.

Captain Ronald Lang and Officer Warren Eckman arrived at the scene and were advised that Glusica was very irrational and that he had made some threats about a gun. Lang, who knew Glusica, entered the house with two other officers to talk to Glusica and try to resolve the situation. Slossen went around the house to cover the back door. Lang informed Glusica of the complaint and asked him to come to the police station. Suddenly, Glusica rushed to the back of the house. He threw open the back door which struck Officer Slossen in the face.

Lang testified that he put his hand on Glusica's shoulder at that time and said "Come on, Bob, this is enough. Let's get this taken care of." Glusica, a large man (6 feet, 200 pounds), began thrashing and throwing his body around. All four officers were trying to subdue Glusica when suddenly everyone fell to the floor. Lang testified that he was on the bottom of the pile, but that he did not know how he lost his balance. Jonassen testified that he lost his balance which caused everyone to lose their balance. Lang suffered a severe injury to his knee.

Prior to the trial of this action, Glusica pleaded guilty to the charge of obstruction of justice for his actions in resisting arrest. However, at trial he testified that he put up no resistance to being arrested.

Lang testified that he had 18 years of experience as a police officer; that he handled six to ten domestic disturbance calls per month; and that he believed these types of calls were among the most volatile and dangerous. He testified that, in answering prior domestic disturbance calls, he had been swung at by people and had been assaulted by persons with guns, knives, and other weapons. He also testified that he knew this was more than a normal domestic disturbance because four officers were present.

## ISSUE

Did the trial court err in denying Glusica's motion for directed verdict based upon the fireman's rule?

## ANALYSIS

Glusica contends that the trial court erred in refusing to enter a directed verdict against Lang based upon the fireman's rule. The supreme court has stated the basis upon which a trial court may direct a verdict:

> [T]he trial court must consider the record as a whole and treat as credible the evidence for the adverse party and all inferences which may reasonably be drawn from that evidence. The trial court should grant the motion only when it would clearly be its duty to set aside a contrary verdict as manifestly against the evidence or when such a verdict would not comply with the applicable law.

*Midland National Bank v. Perranoski,* 299 N.W.2d 404, 409 (Minn.1980). The same standard governs appellate review. *Id.*

The fireman's rule is a legal theory which relieves landowners and others of their duty of reasonable care towards firemen and policemen with respect to risks that could reasonably be anticipated during the course of the latters' employment. *See Griffiths v. Lovelette Transfer Co.,* 313 N.W.2d 602, 604–05 (Minn.1981); *Hannah v. Jensen,* 298 N.W.2d 52, 54 (Minn.1980). The basis of the fireman's rule is the doctrine of primary assumption of risk—that "one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby." *Armstrong v. Mailand,* 284 N.W.2d 343, 350 (Minn.1979) (quoting *Walters v. Sloan,* 20 Cal.3d 199, 204, 142 Cal.Rptr. 152, 155, 571 P.2d 609, 612 (1977)). The broad parameters of the fireman's rule were succinctly set forth in *Armstrong:*

> Firemen assume, in a primary sense, all risks reasonably apparent to them that are part of firefighting. However, they do not assume, in a primary sense, risks that are hidden from or unanticipated by the firemen. Thus, a fireman may not recover damages from a landowner if his injury is caused by a reasonably apparent risk. But, he may recover if his injury is caused by a hidden or unanticipated risk attributable to the landowner's negligence and such negligence is the proximate cause of the injury.

284 N.W.2d at 350.

In *Hannah v. Jensen,* the supreme court considered a fact situation analogous to that in the present case. There, an on-duty police officer was called to a bar where a patron was having an altercation with the bartender. The officer was on the premises for the specific purpose of arresting the patron and was aware of the patron's belligerent and drunken conduct. After escorting the patron outside, the officer was injured attempting to subdue him. The officer sued the patron and the two bars for his injuries. The supreme court, in reviewing an order dismissing the claim against the bars, concluded:

> A police officer certainly can anticipate that an intoxicated person, whom the officer is called to subdue, may become aggressive or even violent. The risk of injury from such a person is an inherent part of police work, just as the danger of explosion is an inherent part of firefighting. In performing his official duties, [the officer] manifested his consent to assume the risks he could reasonably anticipate would accompany those duties. Therefore, the rationale of the fireman's rule clearly applies to this case.

298 N.W.2d at 54 (footnote omitted). Although *Hannah v. Jensen* did not directly discuss the fireman's rule as applied in favor of the bar patron, it is clear from the broad language used by the court that the rule would also preclude recovery from the patron for any negligence within the scope of the risks assumed by the officer. In a later case brought by Hannah's wife against the two bars for damage to her means of support, the supreme court affirmed its holding in *Hannah v. Jensen:*

> [In *Hannah v. Jensen* ] we held that the fireman's rule bars recovery by police

officers in dram shop actions where the injuries resulted from risks reasonably anticipated in the course of the officers' duties. * * *.

      *      *      *      *      *      *

In *Hannah I,* we determined that the fireman's rule prevented Hannah from recovery under the statute on the theory that *a policeman assumes the risk of being assaulted by the person he is called to subdue.*

*Hannah v. Chmielewski, Inc.,* 323 N.W.2d 781, 781–82 (Minn.1982) (footnote omitted; emphasis added). The supreme court further stated that:

> the fireman's rule is founded on the idea of voluntariness. The rule "finds its clearest application in situations * * * [where] a person who, fully aware of the hazard created by the defendant's negligence, voluntarily confronts the risk for compensation." *Walters v. Sloan,* 20 Cal.3d 199, 204, 571 P.2d 609, 612, 142 Cal.Rptr. 152, 155 (1977).

*Id.* at 783.

■ Thus, the fireman's rule shields liability for injuries inflicted by a participant where the act causing the injury is one which the officer should have reasonably anticipated to occur while he was engaged in that duty which brought him to the scene.[2]

■ There can be no doubt that the facts of the present case come under the above rule. Lang was called to the scene because Glusica was resisting arrest, and Lang knew that Glusica was irrational and had made threats. From his long experience as a police officer and from handling many domestic disturbance calls, Lang knew or reasonably should have anticipated the possibility of a scuffle and injury in trying to arrest Glusica. Therefore, the fireman's rule applies and shields Glusica from liability.

The trial court also reached this conclusion and directed a verdict in Glusica's favor on the issue of whether Lang should have reasonably anticipated the risks. The trial court rejected the idea that the risks were either hidden from or unanticipated by Lang. This ruling should have terminated Lang's action against Glusica.[3]

However, the trial court went on to hold that, if Glusica was actively negligent at the scene, then the fireman's rule would not bar Lang's claim. The trial court relied exclusively on *Kaiser v. Northern States Power Co.,* 353 N.W.2d 899 (Minn.1984), for this proposition. In *Kaiser,* eight firemen were fighting a fire that had started from a gas leak at a hotel where the defendant maintained natural gas lines. Before the defendant was able to shut off the gas, a second explosion occurred, injuring the firemen. In remanding the case to the trial court for a new trial, the supreme court stated:

> Even if the finder of fact determines the risk of [the second] explosion was reasonably apparent, still the 'fireman's rule' might not bar respondents' claims if NSP was actively negligent at the scene of the fire and that negligence caused the firefighters' injuries. A landowner or person in control owes firefighters a duty "to exercise ordinary care to avoid

---

**2.** This is also the rule in California. In *Lenthall v. Maxwell,* 138 Cal.App.3d 716, 188 Cal.Rptr. 260 (1982), a police officer brought an action against a man who shot and injured him when he responded to an order to proceed to the man's home to subdue a violent offense involving firearms. The court held that the fireman's rule applied because under those circumstances, "a police officer * * * should reasonably anticipate that one of the persons whom he was called on to subdue might resist him by use of the firearms involved." *Id.* at 719, 188 Cal.Rptr.

at 262. *See also Rose v. City of Los Angeles,* 159 Cal.App.3d 883, 206 Cal.Rptr. 49 (1984) (distinguishing *Lenthall* ).

**3.** The fireman's rule does not apply to an intentional tort. *Woodland Mutual Fire Insurance Co. v. Palmi,* 366 N.W.2d 125, 127 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. June 27, 1985). However, in the present case, Lang chose to present his case solely on a negligence theory.

imperiling [them] by any active conduct." The "fireman's rule" should not shield from liability a landowner or other defendant whose misconduct at the fire scene *materially enhances the risk or creates a new risk of harm* and causes injury to firefighters.  * * *.

\*      \*      \*      \*      \*      \*

In the present case, applicability of the "fireman's rule" raises questions of whether risk of a second explosion was reasonably apparent to the firefighters and whether NSP's alleged negligence at the fire scene created a new risk or materially enhanced the risk of harm to the firefighters.

*Id.* at 905 (emphasis added; citation and footnote omitted).

Initially, we note that *Kaiser* is distinguishable from the present case. In *Kaiser*, it was alleged that NSP failed to warn the firefighters of the risk of a second explosion, a risk which the firefighters allegedly did not anticipate. In the present case, Lang knew that such domestic disturbance calls were dangerous and his fellow officers fully informed him of the situation. Lang's injury was not the result of some unanticipated risk, but rather resulted from an anticipated risk.

Moreover, the supreme court in *Kaiser* did not overrule *Hannah v. Jensen* or any other prior fireman's rule case. Thus, the statements in *Kaiser* must be harmonized with those in prior cases.

Lang contends that *Kaiser* held that any active negligence at the scene by a defendant defeats application of the fireman's rule. The dissent does not go quite so far, concluding that "any material enhancement of a risk by misconduct" is sufficient to prevent use of the rule. Both of these formulations, however, fly directly in the face of *Hannah v. Jensen* where the bar patron *assaulted* the officer who was trying to subdue him. Both formulations also ignore the basis of the fireman's rule—that

a person who has voluntarily confronted a known risk cannot recover for injuries sustained thereby.  If a party knows that in a given situation another party is likely to be actively negligent and that injury is possible and voluntarily proceeds—then there can be no recovery under the primary assumption of risk doctrine.

A much better harmonization of the *Kaiser* statements with prior cases is that a person who "materially enhances the risk or creates a new risk of harm" by his active negligence is a person who has created an *unanticipated* risk.  This construction comports not only with *Hannah v. Jensen* and the primary assumption of risk doctrine, but also with the California case which the supreme court cited in *Kaiser.*

In that case, *Lipson v. Superior Court,* 31 Cal.3d 362, 182 Cal.Rptr. 629, 644 P.2d 822 (1982), a firefighter responded to a chemical boilover at a plant.  The firefighter was told by the defendant that the boilover did not involve toxic substances.  The firefighter acted in reliance on that representation and suffered injury due to his exposure to toxic substances.  The California Supreme Court held the fireman's rule inapplicable where the defendant materially enhanced the risk or created a new risk by misleading the firefighter as to the nature of the danger to be confronted.  The court's basis for this holding was that "[a] fireman cannot reasonably be expected to anticipate such misconduct on the part of an owner or occupier of a building." *Id.* at 371, 182 Cal.Rptr. at 635, 644 P.2d at 828. Thus, the defendant had materially enhanced the risk by creating an unanticipated risk.

As stated above, in the present case there was no unanticipated risk which directly caused the injury to Lang.  Thus, Glusica's conduct cannot be said to have materially enhanced or created a new risk

of harm. We conclude that the fireman's rule applies to shield Glusica from liability.[4]

### DECISION

The fireman's rule shields liability for injuries where the act causing the injury is one which the officer should have reasonably anticipated to occur while he was engaged in the duty which occasioned his presence.

Reversed.

CRIPPEN, J., dissents.

CRIPPEN, Judge (dissenting).

Appellant proposes application of the fireman's rule to shield him from liability for his active misconduct. The trial court would not permit this injustice, nor should we. Appellant argues for an application of the rule more broad than permitted by prior decisions of the supreme court. The mischief in overextending the rule is compounded by the fact that it is proposed for one of the few remaining police cases where the discarded rule can even be asserted.

The trial court concluded that Officer Lang should have anticipated the risk of injury when he entered the Glusica home. Nevertheless, the trial court advised the jury to decide if Glusica did "actively and physically resist being arrested in the kitchen of his home;" on the jury's affirmative response, the court entered a judgment consistent with the further finding that Lang was injured as a result of Glusica's negligence. As the trial court observed, this approach is specifically indicated by the holding in *Kaiser v. Northern States Power Co.*, 353 N.W.2d 899 (Minn. 1984).

In *Kaiser*, firemen entered a hotel where one gas explosion had already occurred. The firemen were injured in a second explosion. The supreme court chose not to examine whether it was evident that the second explosion should have been anticipated:

> Even if the finder of fact determines the risk of explosion was reasonably apparent, still the "fireman's rule" might not bar respondents' claims if NSP was actively negligent at the scene of the fire and that negligence caused the firefighters' injuries.

*Id.* at 905.

The majority would alter the supreme court's approach by unnecessarily interpreting further court language regarding active misconduct that "materially enhances" the risk. Contrary to the view of the majority here, the *Kaiser* decision does not speak of misconduct enhancing a risk to some extent beyond what was anticipated. As the trial court concluded, it is evident instead that any material enhancement of a risk by misconduct, whether or not it should have been anticipated, is sufficient to proscribe the actor's interjection of the fireman's rule. "Even if the * * * risk * * was necessarily apparent," the rule may not apply to favor an actively negligent party. *Id.*

The majority opinion also unduly enlarges the significance of the supreme court's

---

**4.** The dissent asserts that the trial court should be affirmed. Such a contention overlooks the obvious inadequacy of the special verdict question.

The following question was submitted to the jury:

> Did the defendant Robert E. Glusica actively and physically resist being arrested in the kitchen of his home on December 1, 1980?

The trial court equated resisting arrest with active negligence and ruled that a finding of active negligence was sufficient to make the fireman's rule inapplicable.

Given this single question phrased the way it was, the jury had no choice but to answer it in the affirmative. Glusica had pleaded guilty to the charge of resisting arrest and the jury knew this fact. The jury could not have been expected to separate the fact of "resisting arrest" from its qualifying phrase "actively and physically." When the trial court put this question to the jury, the court already knew the answer; in effect, the court directed a verdict in favor of Lang. Glusica was thereby denied the opportunity to present and argue his theory of the case. Were it necessary to address this issue, this case could be reversed on this ground alone.

902

holding in *Hannah v. Jensen*, 298 N.W.2d 52 (Minn.1980). First, *Hannah* preceded *Kaiser* and does not limit the impact of the later decision for those who perpetuate active misconduct. In *Hannah* a police officer was injured as a result of the active misconduct of a bar patron, and the officer sued the bar owner, not the assaulting patron. Moreover, the *Hannah* holding rested in part on the public policy view that bar owners should be encouraged to summon police; that policy does not arise in favor of one who is not seeking help and is in fact causing the problem requiring police attention; in addition, the supreme court has already observed that the policy consideration adopted in *Hannah* was "swept away" by the 1982 legislative nullification of the fireman's rule for policing cases. *See Hannah v. Chmielewski*, 323 N.W.2d 781, 784 (Minn.1982).

Because the fireman's rule is based on the doctrine of primary assumption of risk, it is a theory that goes to the question of whether respondent had a duty to protect appellant from a risk of harm. *Id.* at 782. This "shield" does not protect those whose active negligence triggers a risk. *Kaiser*, 353 N.W.2d at 905. To affirm the conclusion of the trial court would serve equally to affirm the judgment of both the supreme court and the legislature. Because I believe this should be our decision, I respectfully dissent.